# STATE OF MICHIGAN

# COURT OF APPEALS

MARK L. MCALPINE and LYNETTE
MCALPINE,

        Plaintiffs-Appellants,

v

DONALD A. BOSCO BUILDING, INC., MIKE
OTTMAN ASPHALT PAVING, LLC,
SMEDESON STEEL & SUPPLY COMPANY,
INC., also known as SMEDE-SON STEEL &
SUPPLY COMPANY, INC., SCHWARTZ
PLUMBING, INC., DILLMAN AND UPTON,
INC., GENESEE CUT STONE & MARBLE
COMPANY, K & R CONGRETE, INC.,
DETROIT SPECTRUM PAINTERS, INC.,
ROCWLL COMPANY, STONEWORK BY
GULYAS & CO, R & R EARTHMOVERS, INC.,
B & B WELL DRILLING, INC., NATIONAL
LADDER & SCAFFOLD COMPANY, INC.,
PROFESSIONAL ENGINEERING
ASSOCIATES, INC., TRUCKING
SPECIALISTS, INC., BEAVER STAIR
COMPANY, EXTREME STONE SOLUTIONS,
LLC, DELTA TRIM & DESIGN, INC.,
FRANKLIN FLOOR COVERING PLUS, INC.,
FMG CONCRETE CUTTING, INC., NOVI
INSULATION, INC., MARINE CITY CEILING
& PARTITION, INC., GET RICH QUIK, INC.,
CAPITAL STONEWORKS, LLC, ACE
ASPHALT & PAVING COMPANY, and
NIELSEN QUALITY HOMES, INC.,

        Defendant-Appellees,

and

WATERTITE COMPANY, also known as
WATER-TITE COMPANY, SATURN
ELECTRIC, INC., NATIONAL CITY BANK,

UNPUBLISHED
February 15, 2018

No. 334363
Oakland Circuit Court
LC No. 2009-097338-CK

-1-

HOMEOWNER CONSTRUCTION LIEN
RECOVERY FUND, and NATIONAL CITY
MORTGAGE

             Defendants,

and

TM WOOD PRODUCTS,

             Third-Party Plaintiff/Defendant-
             Appellee.
_____

Before:  TALBOT, C.J., and METER and TUKEL, JJ.

PER CURIAM.

        In this action to enforce construction liens under the Michigan Construction Lien Act (CLA), MCL 570.1101 *et seq*., plaintiffs appeal as of right the trial court's July 28, 2016, orders granting a motion for reconsideration and awarding attorney fees under the CLA to various subcontractors of defendant Donald A. Bosco Building, Inc. (Bosco).  We affirm.

## I.  FACTS AND PROCEEDINGS

### A.  INITIATION OF PROCEEDINGS THROUGH PLAINTIFFS' PRIOR APPEAL

        This action arose from plaintiffs' agreement with Bosco for the latter to construct a custom home for plaintiffs.  The agreement included a negotiated guaranteed maximum price of $3,350,000, which was subject to adjustment by change orders.  After the parties disagreed on the amount owed under the agreement, plaintiffs initiated an arbitration proceeding and the instant circuit court action against Bosco for breach of contract.  Bosco filed a counterclaim for breach of contract and foreclosure of its construction lien.  Bosco's subcontractors and suppliers were also named as defendants in the circuit-court action, but they were not parties to the arbitration proceeding.

        The parties' claims for breach of contract were resolved through arbitration.  The arbitration panel issued an award in favor of Bosco, but concluded that neither party was entitled to attorney fees.  The trial court subsequently confirmed the arbitration award and entered judgment in favor of Bosco on its counterclaim for breach of contract, in accordance with the arbitration award.  Plaintiffs applied to this Court for leave to appeal the trial court's order confirming the arbitration award, but this Court denied the application "for failure to persuade the Court of the need for immediate appellate review." *McAlpine v Donald A Bosco Bldg, Inc*, unpublished order of the Court of Appeals, entered September 30, 2010 (Docket No. 300059) ("*McAlpine I*").

Bosco thereafter moved for summary disposition on its lien-foreclosure claim. After plaintiffs satisfied the money judgment on Bosco's breach-of-contract claim, Bosco continued to seek summary disposition of its construction-lien claim for the limited purpose of seeking attorney fees under MCL 570.1118(2), a provision of the CLA. Various subcontractors and suppliers of Bosco (hereinafter "the lien claimants") also pursued attorney fees in motions for summary disposition. In an order dated May 17, 2011, the trial court determined that Bosco and the lien claimants had valid construction liens, and concluded that plaintiffs' satisfaction of Bosco's judgment did not preclude an award of reasonable attorney fees to the lien claimants.

After hearing the parties' arguments concerning attorney fees, the court declined to award attorney fees to Bosco, reasoning that the arbitrators had awarded Bosco only slightly more than half of the amount of its construction lien and that, therefore, plaintiffs' refusal to pay the original lien amount was not unreasonable. However, the trial court awarded attorney fees to the lien claimants and, at plaintiffs' request, scheduled an evidentiary hearing to determine the reasonableness of a fee award. Following a hearing, the trial court issued an order on March 29, 2013, awarding statutory attorney fees to the lien claimants.

In a prior appeal, plaintiffs challenged the trial court's March 29, 2013, order awarding attorney fees, as well as prior orders. Bosco filed a cross-appeal, challenging the trial court's denial of its request for attorney fees under the CLA. This Court concluded that it "lack[ed] jurisdiction over all issues except attorney fees because [plaintiffs'] appeal is untimely." *McAlpine v Bosco Building, Inc*, unpublished opinion per curiam of the Court of Appeals, issued December 18, 2014 (Docket No. 316323) ("*McAlpine II*"), p 6. However, this Court stated that "[d]espite the procedural deficiency, we address the issues raised by plaintiffs to promote judicial efficiency and clearly dispose of these issues." *Id*. at 7.

This Court concluded that the trial court did not err in denying Bosco's request for attorney fees. *Id*. at 11-13. This Court further held that the trial court did not abuse its discretion in granting the lien claimants' request for attorney fees. *Id*. at 13. This Court also concluded that the attorney fees awarded were reasonable. *Id*. at 14. In conclusion, this Court stated:

> The trial court did not err in denying plaintiffs' motion to vacate or modify the arbitration award, and, therefore, did not err in granting summary disposition to the lien claimants and Bosco. The trial court did not err in granting TM Wood's Motion for Summary Disposition. The trial court did not abuse its discretion in denying Bosco attorney fees pursuant to MCL 570.1118, nor did it clearly err in denying Bosco attorney fees pursuant to MCL 600.2591 and MCR 2.114. Finally, the trial court did not abuse its discretion in awarding attorney fees [to the lien claimants] or in the determination of the reasonableness of attorney fees. [*Id*. at 16.]

Thereafter, the Supreme Court denied plaintiffs' application for leave to appeal this Court's decision. *McAlpine v Donald A Bosco Bldg, Inc*, 498 Mich 884; 869 NW2d 584 (2015).

## B. EVENTS FOLLOWING *McALPINE II*

After *McAlpine II* was decided, the lien claimants were unable to obtain writs of garnishment to pursue collection efforts in relation to the previously-awarded attorney fees, because the trial court's order awarding attorney fees had not been reduced to a judgment. Therefore, the lien claimants filed a motion for entry of judgment. Plaintiffs opposed the motion and argued in response that the arbitrators' earlier refusal to award attorney fees to Bosco also operated to preclude the lien claimants from recovering attorney fees under the CLA, because Bosco was seeking to enforce the lien claimants' rights along with Bosco's rights. Although plaintiffs did not oppose the lien claimants' motion on the ground that they delayed too long in moving for entry of judgment, the trial court sua sponte denied the motion for entry of judgment on that basis.

The lien claimants thereafter filed a motion for reconsideration, arguing that the trial court made "a palpable error" when it denied the lien claimants' motion for entry of judgment as untimely. The trial court was persuaded by the lien claimants' argument and granted their motion for reconsideration. It also entered a judgment in favor of the lien claimants, consistent with its earlier order awarding them attorney fees. Plaintiffs now appeal those orders.

## II. EFFECT OF ARBITRATION AWARD

Plaintiffs argue that the doctrine of collateral estoppel should be applied to preclude the lien claimants from recovering attorney fees because, plaintiffs argue, this issue was previously resolved by the arbitration panel, which denied Bosco's request for attorney fees. The lien claimants counter by arguing that res judicata precludes plaintiffs from raising this argument because they did not challenge the award of attorney fees on this basis in *McAlpine II*. "The applicability of legal doctrines such as res judicata and collateral estoppel are questions of law to be reviewed de novo." *Husted v Auto-Owners Ins Co*, 213 Mich App 547, 555; 540 NW2d 743 (1995), modified and remanded on other grounds 455 Mich 862 (1997), aff'd 459 Mich 500 (1999).

"The preclusion doctrines of res judicata and collateral estoppel serve an important function in resolving disputes by imposing a state of finality to litigation where the same parties have previously had a full and fair opportunity to adjudicate their claims." *William Beaumont Hosp v Wass*, 315 Mich App 392, 398; 889 NW2d 745, 749-750 (2016) (quotation marks and citation omitted). Res judicata applies if "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair v Michigan*, 470 Mich 105, 121; 680 NW2d 386 (2004). Generally, for collateral estoppel to apply, three elements must be satisfied: "(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *Monat v State Farm Ins Co,* 469 Mich 679, 682-684; 677 NW2d 843 (2004) (quotation marks, citation, and brackets omitted). "Collateral estoppel bars relitigation of an issue in a new action arising between the same parties or their privies when the earlier proceeding resulted in a valid final judgment and the issue in question was actually and necessarily determined in that prior proceeding." *Leahy v Orion Twp,* 269 Mich App 527, 530; 711 NW2d 438 (2006). Unlike res judicata, which precludes

relitigation of claims, see *Bennett v Mackinac Bridge Auth*, 289 Mich App 616, 629; 808 NW2d 471 (2010), collateral estoppel prevents relitigation of issues, *Ditmore v Michalik*, 244 Mich App 569, 577; 625 NW2d 462 (2001). Whether the lien claimants' eligibility for attorney fees is regarded as a "claim" or an "issue," plaintiffs' reliance on the arbitration award to preclude their requested attorney fees is unpersuasive.

Paintiffs argue that the arbitration award, confirmed by the trial court and affirmed by this Court, was a valid and final judgment denying attorney fees to Bosco. The principle of collateral estoppel "applies to factual determinations made during grievance hearings or arbitration proceedings." *Porter v Royal Oak*, 214 Mich App 478, 485; 542 NW2d 905 (1995). However, the dispute addressed in the arbitration proceeding did not involve enforcement of construction liens under the CLA. The arbitration panel's decision denying Bosco's request for attorney fees pertained to enforcement of the construction agreement, not a claim for enforcement of a construction lien. The arbitration award expressly recognized that enforcement of the construction liens (and therefore, by implication, the availability of attorney fees under MCL 570.1118) was the subject of "state court action(s)." The scope of arbitration is limited to the subjects of the parties' arbitration agreement. See *Fromm v MEEMIC Ins Co*, 264 Mich App 302, 305-306; 690 NW2d 528 (2004). Accordingly, the arbitrators' denial of attorney fees to Bosco in relation to the breach-of-contract claim did not involve a decision on the merits regarding entitlement to attorney fees under the CLA for purposes of res judicata, or a question resolved with finality with respect to collateral estoppel. *Adair*, 470 Mich at 121; *Monat*, 469 Mich at 682.

In addition, other elements of claim preclusion are lacking. Plaintiffs acknowledge that the lien claimants were not parties to the arbitration proceeding, but they argue that the lien claimants were in privity with Bosco because Bosco presented claims based on unpaid costs to lien creditors. We disagree, because Bosco and the lien claimants are distinct parties seeking distinct remedies.

With respect to the element of mutuality of estoppel, plaintiffs state that this requirement is excused where a party bound by the prior judgment asserts collateral estoppel defensively. Judge Cavanagh stated the following in *Monat*:

> "[M]utuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue that party must have also been a party, or privy to a party, in the previous action." *Lichon* [*v American Universal Ins Co*, 435 Mich 408], 427; 459 NW2d 288 [(1990)]. Stated differently, "estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him." *Howell* [*v Vito's Trucking & Excavating Co*, 386 Mich 37,] 43, 191 NW2d 313 [(1971)] (citations omitted). Unless *both* parties in a subsequent action are bound by a prior judgment, neither party may use that prior judgment as determinative of an issue in the subsequent action. [*Monat*, 469 Mich at 696 (CAVANAGH, J., dissenting).]

The *Monat* Court in the majority opinion stated:

> "A party who has had a full and fair opportunity to litigate an issue has been accorded the elements of due process. There is no good reason for refusing to treat the issue as settled so far as he is concerned other than that of making the burden of litigation risk and expense symmetrical between him and his adversaries." Judgments, p 292, comment b. In circumstances where mutuality is required and where collateral estoppel is asserted defensively, the mutuality requirement only encourages gamesmanship by a plaintiff. [*Monat*, 469 Mich at 691-692.]

Plaintiffs state that they are asserting the doctrine defensively and that collateral estoppel applies. Plaintiffs are misinterpreting the applicable legal principle. The Supreme Court in *Monat* stated that "the lack of mutuality of estoppel should not preclude the use of collateral estoppel when it is asserted defensively to prevent a party from relitigating an issue that such party has already had a full and fair opportunity to litigate in a prior suit." *Id*. at 691-692. As an example, the Court mentioned a case in which a plaintiff was convicted of a crime, raised the issue of ineffective assistance of counsel in a direct appeal, lost the appeal, and subsequently sued his attorney for legal malpractice, asserting the same grounds that he had asserted in the appeal. *Id*. at 690. The Court approved of the defensive use of collateral estoppel by the attorney in such a case, because the plaintiff had had a full and fair opportunity to litigate the issue in a prior proceeding. See *id*. at 691-692. Here, plaintiffs are attempting to attribute Bosco's ineligibility for attorney fees in arbitration to the lien claimants, based on arbitration proceedings to which the lien claimants were not parties; the lien claimants did not have a full and fair opportunity to litigate the relevant issue.

Further, plaintiffs' reliance on collateral estoppel disregards the procedural history of the civil litigation. The trial court determined in a November 8, 2011, order that the lien claimants were entitled to attorney fees. The trial court denied attorney fees to Bosco under the CLA, not because of the arbitration award, but because an award of fees was "not warranted" because Bosco received "slightly more than half of its construction lien" amount in arbitration, and plaintiffs "avoided an overpayment of $780,697[.]" In the same order, the trial court determined that the lien claimants were entitled to attorney fees. Following an evidentiary hearing and related proceedings, the trial court awarded the lien claimants attorney fees on March 29, 2013. Plaintiffs appealed that order to this Court, and Bosco cross-appealed the denial of attorney fees. Plaintiffs did not argue in *McAlpine II* that the arbitration award precluded the lien claimants from recovering attorney fees in the civil litigation. See, generally, *McAlpine II*, unpub op at 13-14. Plaintiffs argued that the trial court erred in failing to vacate the arbitration award, see *id*. at 7, but did not argue that if the award was confirmed, it precluded attorney fees for the lien claimants. This Court expressly considered and rejected plaintiffs' arguments regarding the lien claimants' entitlement to attorney fees. *Id*. at 13-14.

In *Vanderwall v Midkiff*, 186 Mich App 191; 463 NW2d 219 (1990), this Court addressed the application of res judicata when this Court grants a party relief on appeal, and a party thereafter raises a new issue in the trial court that could have been raised in the prior appeal. *Vanderwall* involved an action by the personal representative of a decedent's estate to invalidate transfers of the decedent's assets to some of the defendants. *Id*. at 193. The plaintiff maintained

that the defendant who executed the transfers acted without the decedent's authorization. See *id*. at 193-194. The jury found that the transfers were made without the decedent's authorization, but the trial court granted the defendants' motion for judgment notwithstanding the verdict (JNOV). *Id*. at 194. On appeal, this Court reversed the trial court's order granting JNOV and directed reinstatement of the judgment entered pursuant to the jury's verdict. *Id*. In addition,

> [t]his Court also considered a second issue, concerning the trial court's failure to address the question whether third-party defendant Transamerica Title or plaintiff would ultimately be held liable for attorney fees paid on behalf of the Midkiff estate. This Court determined that resolution of the issue depended upon several factual determinations that were unclear from the record and remanded the matter to the trial court to resolve the attorney fee issue. [*Id*.]

As explained in *Vanderwall*:

> On remand, the trial court addressed the attorney fee issue as well as a number of other issues raised by plaintiff ancillary to entry and enforcement of the judgment. It was at this point that some of the defendants raised objection to plaintiff's interpretation of the judgment that prejudgment and postjudgment interest would accrue on that part of the judgment which represented a $45,000 award to plaintiff in lieu of title to the real estate. The trial court determined that plaintiff was not entitled to prejudgment and postjudgment interest on this portion of the judgment and so provided in its order. It is the issue of plaintiff's entitlement to that interest which forms the subject of this appeal. [*Id*.]

In the second appeal, this Court addressed "whether defendants can now raise the interest issue, not having previously argued that issue during or prior to the first appeal and, similarly, whether the trial court's actions in the case at bar were inconsistent with this Court's prior decision." *Id*. at 196. This Court cited with approval Judge Gillis's partial dissent in *Meyering v Russell*, 85 Mich App 547; 272 NW2d 131 (1978), which, it concluded, was consistent with the Michigan Supreme Court's decision in *Peters v Aetna Life Ins Co*, 282 Mich 426; 276 NW 504 (1937). *Vanderwall*, 186 Mich App at 199, 201. This Court stated:

> In light of the Supreme Court's decision in *Peters*, *supra*, as well as Judge Gillis' well-reasoned dissent in *Meyering*, *supra*, we conclude that the principles of res judicata require that a party bring in the initial appeal all issues which were then present and could have and should have been raised. That is, just as plaintiff was required in the initial appeal to present all arguments why the trial court had erred in granting judgment notwithstanding the verdict, defendants were also required to bring their challenges to the underlying judgment, whether it had been by way of argument in the appellees' brief defending the trial court's action or by way of cross appeal raising issues separate from the issue of the granting of judgment notwithstanding the verdict.
>
> Defendants could have, and should have, initially raised the interest issue in the trial court prior to the first appeal and, if dissatisfied with the trial court's resolution of the issue, filed a cross appeal to plaintiff's original appeal, raising

the interest issue before this Court in the original appeal. In other words, by choosing not to raise the interest issue by way of cross appeal in the original appeal, defendants abandoned the issue, thus limiting their attack on the judgment to their defense of the correctness of the trial court's ruling in granting judgment notwithstanding the verdict.

In sum, defendants should have raised any challenge to the underlying judgment in the original appeal. Having failed to do so, defendants now have little choice but to accept this Court's determination in the original appeal, specifically that the original judgment entered upon the jury verdict was to be reinstated. Had this Court merely concluded that the trial court had erred in granting judgment notwithstanding the verdict and remanded the matter to the trial court for further proceedings with no specific directives, it might be argued that we left open the question of additional challenges to the judgment and that defendants could have raised such challenges, including the interest issue, in the trial court. We need not decide, however, whether our decision today would permit such action since this Court did order the judgment reinstated rather than merely remanding for further proceedings. [*Vanderwall*, 186 Mich App at 201-203.]

This Court noted that its decision "does not preclude a trial court from granting relief from judgment on the basis of issues which were not present at the time of the taking of the original appeal." *Id*. at 203.

Plaintiffs could have, but did not, raise in *McAlpine II* the issue whether the arbitration award precluded the lien claimants from recovering attorney fees under the CLA. Plaintiffs argue that this issue did not become ripe for review until after *McAlpine II* was completed. They argue that the issue of the lien claimants' entitlement to attorney fees was not subject to appeal until the lien claimants moved for entry of judgment in March 2016. In *McAlpine II*, however, plaintiffs expressly challenged the March 29, 2013, order granting the lien claimants attorney fees under MCL 570.1118(2), and this Court expressly held that "the trial court did not abuse its discretion in awarding attorney fees [to the lien claimants] or in the determination of the reasonableness of attorney fees." *McAlpine II*, unpub op at 16. There is no merit to plaintiffs' argument that they were not able to raise the argument that attorney fees were precluded by the arbitration award in *McAlpine II*.[1]

For the foregoing reasons, we reject plaintiffs' argument that the arbitration award precluded the trial court from entering judgment on its earlier award of attorney fees to the lien claimants.

---

[1] We note that "[t]he law of the case doctrine provides that if an appellate court has decided a legal issue . . . the legal issue determined by the appellate court will not be differently decided on a subsequent appeal in the same case where the facts remain materially the same." *Grace v Grace*, 253 Mich App 357, 362; 655 NW2d 595, 599 (2002).

### III. MOTION FOR RECONSIDERATION

Plaintiffs also argue that the trial court erred in granting the lien claimants' motion for reconsideration, because the lien claimants failed to demonstrate that trial court's prior decision denying the motion for entry of judgment as untimely was based on a palpable error. We review a trial court's decision to grant or deny a motion for reconsideration for an abuse of discretion. *D'Alessandro Contracting Group, LLC v Wright*, 308 Mich App 71, 76; 862 NW2d 466 (2014). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Id*. "This Court reviews de novo whether the trial court properly interpreted and applied the relevant court rules to the facts." *Lawrence v Burdi*, 314 Mich App 203, 220; 886 NW2d 748 (2016).

MCR 2.119(F)(3) provides:

> Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error.

The lien claimants argued that the trial court committed a palpable error when it concluded that they unreasonably delayed in moving for entry of judgment.

Entry of judgment is governed by MCR 2.602, which provides, in pertinent part:

> (B) **Procedure of Entry of Judgments and Orders**. An order or judgment shall be entered by one of the following methods:
>
> (1) The court may sign the judgment or order at the time it grants the relief provided by the judgment or order.
>
> (2) The court shall sign the judgment or order when its form is approved by all the parties and if, in the court's determination, it comports with the court's decision.
>
> (3) Within 7 days after the granting of the judgment or order, or later if the court allows, a party may serve a copy of the proposed judgment or order on the other parties, with a notice to them that it will be submitted to the court for signing if no written objections to its accuracy or completeness are filed with the court clerk within 7 days after service of the notice. The party must file with the court clerk the original of the proposed judgment or order and proof of its service on the other parties.
>
> (a) If no written objections are filed within 7 days, the clerk shall submit the judgment or order to the court, and the court shall then sign it if, in the court's determination, it comports with the court's decision. If the proposed judgment or order does not comport with the decision, the court shall direct the clerk to notify

the parties to appear before the court on a specified date for settlement of the matter.

(b) Objections regarding the accuracy or completeness of the judgment or order must state with specificity the inaccuracy or omission.

(c) The party filing the objections must serve them on all parties as required by MCR 2.107, together with a notice of hearing and an alternative proposed judgment or order.

(4) A party may prepare a proposed judgment or order and notice it for settlement before the court.

"The principles of statutory interpretation apply to the interpretation of court rules." *City of Plymouth v McIntosh*, 291 Mich App 152, 156; 804 NW2d 859, 861 (2010). When interpreting a statute, "our goal is to give effect to the intent of the Legislature by focusing on the statute's plain language." *Speicher v Columbia Twp Bd of Trustees*, 497 Mich 125, 134; 860 NW2d 51 (2014). "When construing statutory language, we must read the statute as a whole and in its grammatical context, giving each and every word its plain and ordinary meaning unless otherwise defined." *In re Receivership of 11910 S Francis Rd*, 492 Mich 208, 222; 821 NW2d 503 (2012). "If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted." *Whitman v City of Burton*, 493 Mich 303, 311; 831 NW2d 223 (2013). "In doing so, every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory." *Rogers v Weisel*, 312 Mich App 79, 86-87; 877 NW2d 169 (2015) (quotation marks and citations omitted). "Identical terms in different provisions of the same act should be construed identically, statutory provisions must be read and interpreted as a whole, and the meaning given to one section must be arrived at after due consideration of other sections so as to produce, if possible, an harmonious and consistent enactment as a whole." *The Cadle Co v City of Kentwood*, 285 Mich App 240, 249; 776 NW2d 145 (2009) (quotation marks, citations, brackets, and emphasis omitted).

The lien claimants argue that MCR 2.602(B)(4) provides a method for entering judgment that is not subject to a time limitation. Plaintiffs argue that this interpretation of subrule (B)(4) violates the principles that interpretation must take into account every word or phrase of the court rule, and that provisions "must be read and interpreted as a whole[.]" *Cadle*, 285 Mich App at 249. Plaintiffs argue that subrule (B)(4) must be subject to a time limitation because the methods provided in subrules (B)(1) – (3) each contain time limitations, namely, "at the time it grants the relief" under subrule (B)(1), "when its form is approved by all the parties" under subrule (B)(2), and two consecutive seven-day periods, unless the court grants otherwise, under subrule (B)(3). Plaintiffs' interpretation requires this Court to read into subrule (B)(4) terms that were included in other subrules, but were omitted from subrule (B)(4). "Courts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there." *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993). By analogy, when a court rule includes multiple provisions, each offering an alternative method of accomplishing the relevant purpose, this Court cannot assume that requirements included for one of these methods apply

also to the other methods. Considering MCR 2.602(B) as a whole, it is apparent that subrules (1) and (2) apply where there is no dispute over the content of the order and entry can be accomplished expeditiously. Subrule (3) provides a method for settling and entering an order where the parties disagree on the accuracy and completeness of a proposed order. Subrule (4) provides a "catch-all" method for when the trial court did not sign a judgment or order contemporaneously with its decision, and when the parties failed to avail themselves of subrules (2) and (3). In the latter circumstance, there is no firm time limitation.

Plaintiffs do not adequately explain why the restrictions from the other subrules should apply to subrule (B)(4). Subrules (B)(1) and (2) do not prescribe a period of time, but state that entry occurs contemporaneously with, respectively, the trial court's granting of the relief or the parties' approval of the form of the judgment. Only subrule (B)(3) provides a time period in which the parties must act, but even this limitation is subject to indefinite extension at a trial court's discretion ("or later if the court allows"). The Supreme Court's omission of a time restriction from subrule (B)(4) indicates that one was not intended.

Because there is no prescribed limitation for noticing a proposed judgment or order under MCR 2.602(B)(4), the trial court's decision that the lien claimants' delay in moving for entry of judgment did not preclude it from entering judgment in accordance with its prior decision does not "fall outside the range of reasonable and principled outcomes." *D'Alessandro*, 308 Mich App at 76. Thus, the trial court did not abuse its discretion in granting the lien claimants' motion for reconsideration.

Affirmed.

/s/ Michael J. Talbot
/s/ Patrick M. Meter
/s/ Jonathan Tukel

-11-