Markman, J.
We granted leave to appeal in this case to examine the mutuality requirement of the doctrine of collateral estoppel. In this first-party, no-fault action, defendant seeks to invoke collateral estoppel to preclude plaintiff from relitigating an issue already decided in plaintiff’s third-party negligence action. Due only to a lack of mutuality, the Court of Appeals, in a split decision, affirmed the trial court’s denial of defendant’s motion for summary disposition. We hold that, where collateral estoppel is being asserted *681 defensively against a party who has already had a full and fair opportunity to litigate the issue, mutuality is not required. Further, because we believe that this test has been satisfied, we reverse the decision of the Court of Appeals, remand this case to the trial court, and order that court to grant defendant’s motion for summary disposition.
I. BACKGROUND
While stopped at a traffic light, plaintiff’s vehicle was rear-ended by another vehicle. Plaintiff claims to have suffered serious injuries as a result of this accident. Defendant, plaintiff’s no-fault insurer, paid personal injury protection (pip) benefits, but stopped paying such benefits shortly after plaintiff filed a third-party negligence action against the driver of the other vehicle. Plaintiff then filed this first-party action against defendant for pip benefits.
The third-party action proceeded to trial, where, prior to trial, both parties entered into an agreement to forgo their opportunity to appeal in lieu of plaintiff agreeing to place a cap on damages and defendant agreeing to pay plaintiff an undisclosed sum of damages regardless of the jury’s verdict. That trial ended with a “no cause of action” verdict after the jury specifically found plaintiff not to have been injured. Following this verdict, defendant moved for summary disposition in the first-party action. Defendant asserted that the doctrine of collateral estoppel precluded plaintiff’s first-party claim because plaintiff litigated-and lost the issue of injury in the third-party action. The trial court denied defendant’s motion.
*682 The Court of Appeals, in a split opinion, affirmed the trial court’s decision.[1] The majority concluded that the doctrine of collateral estoppel could not apply because mutuality of estoppel was absent. The dissenting judge, however, opined that the mutuality requirement should be relaxed in cases such as this and, thus, would have applied the doctrine of collateral estoppel.
II. STANDARD OF REVIEW
A trial court’s decision to grant or deny a motion for summary disposition is reviewed de novo. Stanton v Battle Creek, 466 Mich 611, 614; 647 NW2d 508 (2002).
III. ANALY
Under the no-fault act, defendant is obligated to pay plaintiff benefits for “bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle . . . .” MCL 500.3105(1). Defendant asserts that the doctrine of collateral estoppel applies, and thus it is not liable to pay plaintiff pip benefits because plaintiff was found not to have been injured in the third-party action.
Generally, for collateral estoppel to apply three elements must be satisfied: (1) “a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment”; (2) “the same parties must have had a full [and fair] *683 opportunity to litigate the issue”;[2] and (3) “there must *684 be mutuality of estoppel.” Storey v Meijer, Inc, 431 Mich 368, 373 n 3; 429 NW2d 169 (1988). “[Mutuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue that party must have been a party, or in privy to a party, in the previous action. In other words, ‘[t]he estoppel is mutual if the one taking advantage of the earlier adju *685 dication would have been bound by it, had it gone against him.’ ” Lichon v American Universal Ins Co, 435 Mich 408, 427; 459 NW2d 288 (1990), quoting Howell v Vito’s Trucking & Excavating Co, 386 Mich 37, 43; 191 NW2d 313 (1971).
Plaintiff has had a full and fair opportunity to litigate the issue concerning his alleged injury. The general rule permits relitigation when “[t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action . . . .” Restatement § 28(1) (emphasis added). Here, however, plaintiff voluntarily surrendered his opportunity for appellate review, to which he had been entitled as a matter of law. See, e.g., Greenleaf v Garlock, Inc, 174 F3d 352, 359 (CA 3, 1999). Plaintiff, who has been represented by counsel throughout the entire litigation process, agreed prior to trial of the third-party action to forgo his opportunity for appeal the jury’s verdict in lieu of the third-party defendant agreeing to pay plaintiff an undisclosed sum of damages regardless of such verdict. This is, we believe, properly understood as a waiver of any appeal. While the “full and fair opportunity to litigate” normally encompasses the opportunity to both litigate and appeal, plaintiff here voluntarily relinquished the opportunity to pursue an appeal in return for consideration—the guaranteed receipt of a minimal sum of damages regardless of the jury’s verdict. Further, plaintiff’s decision to forgo any appeal was a wise tactical decision because, as a result of this agreement, plaintiff received an undisclosed sum of damages even though the jury concluded that he *686 had suffered no injury.[3] While this agreement guaranteed that plaintiff would receive such damages regardless of the jury’s verdict, there remained nonetheless the possibility that the jury might have awarded a greater award. This possibility afforded sufficient incentive for plaintiff’s vigorous advocacy regarding the injury question in the initial litigation. Moreover, to describe this type of agreement as anything other than “full and fair” would be to encourage a plaintiff to negotiate away appeals with one defendant while keeping in suspense other lawsuits in the event that the plaintiff’s first lawsuit proves unsuccessful.
Overlooking, however, the fact that plaintiff has had a full and fair opportunity to litigate the injury issue in this case,[4] the dissent accepts plaintiff’s argument that he is now entitled to another full and fair opportunity to litigate exactly the same issue only *687 because mutuality of estoppel does not exist. As asserted by the dissent, the general rule supports such an argument—collateral estoppel precludes relitigation and imposes “ ‘a state of finality to litigation where the same parties have previously had a full and fair opportunity to adjudicate their claims.’ ” Post at 696, quoting Nummer v Dep’t of Treasury, 448 Mich 534, 541; 533 NW2d 250 (1995).
However, as the dissent acknowledges, there is a modem trend among the states to recognize exceptions to the mutuality requirement. Moreover, contrary to the dissent, this Court has not “consistently and explicitly declined the invitation to follow the modem trend” of abandoning, in part, the mutuality requirement. Post at 697-698.[5] Rather, we have *688 expressly recognized that “lack of mutuality does not always preclude the application of collateral estoppel. There are several well-established exceptions to the mutuality requirement, such as when an indemnitor seeks to assert in its defense a judgment in favor of its indemnitee, or where a master defends by asserting a judgment for a servant.” Lichon, supra at 428 n 16.[6]
Although the circumstances of the instant case are distinct from those addressed in Lichon, we now expand the exceptions to the requirement of mutuality of estoppel to encompass these circumstances. In our judgment, allowing the defensive use of collateral estoppel in these circumstances would enhance the efficient administration of justice and ensure more consistent judicial decisions.
As early as 1942, the California Supreme Court abandoned mutuality of estoppel altogether on the ground that “it would be unjust to permit one who has had his day in court to reopen identical issues . . . .” Bernhard v Bank of America Nat'l Trust & Savings Ass’n, 19 Cal 2d 807, 813; 122 P2d 892 (1942).[7] In Bernhard, the court stated:
*689 The criteria for determining who may assert a plea of res judicata differ fundamentally from the criteria for determining against whom a plea of res judicata may be asserted. The requirements of due process of law forbid the assertion of a plea of res judicata against a party unless he was bound by the earlier litigation in which the matter was decided. He is bound by that litigation only if he has been a party thereto or in privity with a party thereto. There is no compelling reason, however, for requiring that the party asserting the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation. [Id. at 811-812 (citations omitted).]
The United States Supreme Court in Blonder-Tongue Labs, Inc v Univ of Illinois Foundation, 402 US 313, 323-324; 91 S Ct 1434; 2 L Ed 2d 788 (1971), relied extensively on the Bernhard reasoning in holding that mutuality is not required where collateral estoppel is asserted defensively and where the plaintiff has already had a full and fair opportunity to litigate the issue. The Court stated:
The courts have often discarded the rule while commenting on crowded dockets and long delays preceding trial. Authorities differ on whether the public interest in efficient judicial administration is a sufficient ground in and of itself for abandoning mutuality, but it is clear that more than crowded dockets is involved. The broader question is whether it is any longer tenable to afford a litigant more than one full and fair opportunity for judicial resolution of the same issue. The question in these terms includes as part of the calculus the effect on judicial administration, but it also encompasses the concern exemplified by Bentham’s reference to the gaming table in his attack on the principle of mutuality of estoppel.[8] In any lawsuit where a defendant, because of the mutuality principle, is forced to pres *690 ent a complete defense on the merits to a claim which the plaintiff has fully litigated and lost in a prior action, there is an arguable misallocation of resources. To the extent the defendant in the second suit may not win by asserting, without contradiction, that the plaintiff had fully and fairly, but unsuccessfully, litigated the same claim in a prior suit, the defendant’s time and money are diverted from alternative uses—productive or otherwise—to relitigation of a decided issue. And, still assuming that the issue was resolved correctly in the first suit, there is reason to be concerned about the plaintiff’s allocation of resources. Permitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or “a lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy and wise basis for fashioning rules of procedure.” Although neither judges, the parties, nor the adversary system performs perfectly in all cases, the requirement of determining whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate is a most significant safeguard. [Id. at 328-329 (citation omitted).]
In this state, the Court of Appeals has expressly stated that defensive use of collateral estoppel does not require mutuality. In Knoblauch v Kenyon, 163 Mich App 712; 415 NW2d 286 (1987), the plaintiff was convicted of a sex-related crime. In his direct appeal from the conviction, the plaintiff claimed that his attorney rendered ineffective assistance of counsel, but the conviction was affirmed. The plaintiff then sued the attorney for legal malpractice, essentially asserting the same grounds as those alleged in his criminal appeal. As an affirmative defense, the attorney filed a motion for summary disposition asserting that collateral estoppel barred the subsequent litiga *691 tion. The trial court agreed and granted the attorney’s motion, and the Court of Appeals affirmed, holding that mutuality of estoppel was not required where: (1) collateral estoppel was being asserted defensively and (2) the plaintiff had an opportunity to litigate the issue in a prior proceeding. Knoblauch, supra at 725.[9]
Persuaded by the reasoning of Knoblauch and of the countless other courts that have adopted a similar test,[10] we believe that the lack of mutuality of estoppel should not preclude the use of collateral estoppel when it is asserted defensively to prevent a party from relitigating an issue that such party has already had a full and fair opportunity to litigate in a prior *692 suit. Such a belief is supported by the Restatement of Judgments. “A party precluded from relitigating an issue with an opposing party ... is also precluded from doing so with another person unless ... he lacked full and fair opportunity to litigate the issue in the first action ....” 1 Restatement Judgments, 2d, ch 3, § 29, p 291. “A party who has had a full and fair opportunity to litigate an issue has been accorded the elements of due process. There is no good reason for refusing to treat the issue as settled so far as he is concerned other than that of making the burden of litigation risk and expense symmetrical between him and his adversaries.” Judgments, p 292, comment b. In circumstances where mutuality is required and where collateral estoppel is asserted defensively, the mutuality requirement only encourages gamesmanship by a plaintiff.[11] See n 8. A party is entitled to his day in court on a particular issue, and is not entitled to his day in court against a particular adversary. 31 ALR3d 1044, § 4, p 1068.
The doctrine of collateral estoppel is intended “ ‘to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by prevent *693 ing inconsistent decisions, encourage reliance on adjudication Detroit v Qualls, 434 Mich 340, 357 n 30; 454 NW2d 374 (1990), quoting Allen v McCurry, 449 US 90, 94; 101 S Ct 411; 66 L Ed 2d 308 (1980). By refusing to adopt the majority’s test, the dissent does nothing to preserve the underpinnings of collateral estoppel. The dissent would require defendants to relitigate previously adjudicated issues;[12] it would require the judicial system to employ scarce resources repeatedly adjudicating the same issue; it would increase the likelihood of inconsistent decisions being rendered by the judicial process; it would promote opportunities for parties to use the judicial process in a vexatious manner; and it would require defendants to expend resources relitigating issues. Each of these effects would only weaken our judicial process.[13]
Further, the dissent, at least in part, apparently bases its position on the notion that fairness, in the context of defensive collateral estoppel, is determined only on the basis of symmetry. Post at 702.[14] However, *694 as explained in Bruszewski v United States, 181 F2d 419 (CA 3, 1950), the achievement of “substantial justice,” rather than symmetry, is the proper measure of fairness in the context of defensive collateral estoppel:
This second effort to prove negligence is comprehended by the generally accepted precept that a party who has had one fair and full opportunity to prove a claim and has failed in that effort, should not be permitted to go to trial on the merits of that claim a second time. Both orderliness and reasonable time saving judicial administration require that this be so unless some overriding consideration of fairness to a litigant dictates a different result in the circumstances of a particular case.
The countervailing consideration urged here is lack of mutuality of estoppel. In the present suit [the plaintiff] would not have been permitted to take advantage of an earlier affirmative finding of negligence, had such finding been made in [his first suit against a different defendant]. For that reason he urges that he should not be bound by a contrary finding in that case. But a finding of negligence in [the plaintiff’s first suit] would not have been binding against the [defendant in a second suit] because [that defendant] had no opportunity to contest the issue there. The finding of no negligence on the other hand was made after full opportunity to [the plaintiff] on his own election to prove the very matter which he now urges a second time. Thus, no unfairness results here from estoppel which is not mutual. In reality the argument of [the plaintiff] is merely that the application of res judicata in this case makes the law asymmetrical. But the achievement of substantial justice rather than symmetry is the measure of the fairness of the rules of res judicata. [Id. at 421.]
*695 IV. CONCLUSION
In an effort to promote the efficient administration of justice and to ensure more consistent judicial decisions, we hold that, where collateral estoppel is being asserted defensively against a party who has already had a full and fair opportunity to litigate the issue, mutuality is not required. Further, because both requirements of this test have been satisfied here, we reverse the judgment of both the trial court and the Court of Appeals, remand this case to the trial court, and order it to grant defendant’s motion for summary disposition.[15]
Corrigan, C.J., and Weaver, Taylor, and Young, JJ., concurred with Markman, J.

 Unpublished opinion per curiam, issued February 15, 2002 (Docket No. 222690).

 In determining whether a party has had a “full and fair” opportunity to litigate an issue, courts should look to the factors set forth in 1 Restatement Judgments, 2d, ch 3, Former Adjudication, §§ 28-29. Section 28, p 273, provides:
Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
(1) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action; or
(2) The issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws; or
(3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them; or
(4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action; or
(5) There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action, (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.
Section 29, p 291, provides:
A party precluded from relitigating an issue with an opposing party ... is also precluded from doing so with another person unless the fact that he lacked a full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue. The circumstances to which considerations should be given include those enumerated in § 28 and also whether:
*684 (1) Treating the issue as conclusively determined would be incompatible with an applicable scheme of administering the remedies in the actions involved;
(2) The forum in the second action affords the party against whom preclusion is asserted procedural opportunities in the presentation and determination of the issue that were not available in the first action and could likely result in the issue being differently determined;
(3) The person seeking to invoke favorable preclusion, or to avoid unfavorable preclusion, could have effected joinder in the first action between himself and his present adversary;
(4) The determination relied on as preclusive was itself inconsistent with another determination of the same issue;
(5) The prior determination may have been affected by relationships among the parties to the first action that are not present in the subsequent action, or apparently was based on a compromise verdict or finding;
(6) Treating the issue as conclusively determined may complicate determination of issues in the subsequent action or prejudice the interest of another party thereto;
(7) The issue is one of law and treating it as conclusively determined would inappropriately foreclose opportunity for obtaining reconsideration of the legal rule upon which it was based;
(8) Other compelling circumstances make it appropriate that the party be permitted to relitigate the issue.
We note further that the United States Supreme Court has observed in this regard as follows:
Determining whether a [party] has had a full and fair chance to litigate [an issue] in an earlier case is of necessity not a simple matter [because] ... as so often is the case, no one set of facts, no one collection of words or phrases, will provide an automatic formula for proper rulings on estoppel pleas. In the end, [the] decision will necessarily rest on the trial courts’ sense of justice and equity. [Blonder-Tongue Laboratories, Inc v Univ of Illinois Foundation, 402 US 313, 333-334; 91 S Ct 1434; 2 L Ed 2d 788 (1971).]

 In response to plaintiffs attorney’s assertion that plaintiff “should not be punished just because he entered into a settlement to his benefit,” the trial court responded that, in light of this agreement, plaintiff “was the happiest guy on earth when he heard the jury speak. So was his lawyer.”

 Although the dissent fails to identify any reason why it believes plaintiff here did not have a “full and fair opportunity” to litigate the injury issue in the prior case, the dissent nonetheless criticizes the second prong of the majority’s test, stating that any method used to determine whether a party against whom collateral estoppel is asserted defensively had a full and fair opportunity to litigate the issue in a prior case is based on an “ ‘ad, hoc formulation of . . . innumerable and unmanageable factors.’ ” Post at 698, quoting Howell, supra at 51. While we agree that a court must “proceed cautiously” when determining whether this prong has been satisfied, 47 Am Jur 2d, Judgments, § 651, p 60, quoting McCoy v Colonial Baking Co, Inc, 572 So 2d 850, 854 (Miss, 1990), we do not believe that the factors set forth in the Restatement are “innumerable or unmanageable” as evidenced by the fact that not only has the dissent failed to identify any reason it believes such factors are “innumerable and unmanageable,” but the numerous courts that have repeatedly applied these factors have never found them “innumerable and unmanageable.” See 47 Am Jur 2d, Judgments, §§ 651-652, pp 59-68.

 Although the dissent cites Howell for the proposition that this Court has refused to abandon any part of mutuality of estoppel, post at 698, this Court in Howell only refused to abandon mutuality of estoppel where collateral estoppel was asserted offensively. Howell, supra at 48. In fact, it appears that, had this Court in Howell been presented with the issue raised here regarding defensive use of collateral estoppel, the Court may well have abandoned mutuality of estoppel where it is asserted defensively against a party who has already had a full and fair opportunity to litigate the issue in a prior suit:
Although there may be merit to Justice Traynor’s observation in Bernhard [v Bank of American Nat'l Trust & Savings Ass’n, 19 Cal 2d 807; 122 P2d 892 (1942)] that the well-recognized exceptions to the mutuality rule in effect produce the same result as unilateral estoppel or non-mutuality, it should be noted that the recognized exceptions are confined to defensive pleading of collateral estoppel .... This fact is quite significant in determining whether collateral estoppel should or should not apply .... “The courts are more inclined to permit the defensive, than the offensive, use of the doctrine of collateral estoppel.” [Howell, supra at 47 n 7 (citation omitted).]
We believe the clear import of Howell is to allow defensive collateral estoppel where mutuality does not exist. Indeed, a reading of Howell makes any other conclusion difficult, given that the Court there said that the fact of whether collateral estoppel is pleaded offensively or defen *688 sively “is quite significant.” Id. If mutuality were always required, the manner of pleading collateral estoppel would be of no significance.

 Because the Court in Lichon held that “collateral estoppel [was] unavailable to [defendant] because the issue . . . was never actually litigated,” Lichon, supra at 428, we believe that, whatever we said in Lichon concerning mutuality, was dictum. Further, in accord with our analysis of Howell, n 5, what the Court in Lichon said concerning mutuality was in error because the Court in Howell did not generally reaffirm its commitment to mutuality.

 Because this case does not involve the offensive use of collateral estoppel, we express no opinion as to whether Bernhard was correct in its abandonment of mutuality in both the context of its offensive and defensive use.

8 Philosopher Jeremy Bentham had attacked mutuality of estoppel “as destitute of any semblance of reason, and as ‘a maxim which one would *690 suppose to have found its way from the gaming-table to the bench’. . . .” Blonder-Tongue, supra at 322-323 (citations omitted).

 This rule has been followed in subsequent decisions of the Court of Appeals. See Alterman v Provizer, 195 Mich App 422, 424-425; 491 NW2d 868 (1992); Schlumm v Terrance J O’Hagan, PC, 173 Mich App 345, 357; 433 NW2d 839 (1988).

 See, e.g., Adriaanse v United States, 184 F2d 968 (CA 2, 1950); Bruszewski v United States, 181 F2d 419 (CA 3, 1950); Graves v Associated Transport, Inc, 344 F2d 894 (CA 4, 1965); Davis v McKinnon & Mooney, 266 F2d 870 (CA 6, 1959); Federal S&L Ins Corp v Hogan, 476 F2d 1182 (CA 7, 1973); Fisher v Jones, 311 Ark 450; 844 SW2d 954 (1993); Murphy v Northern Colo Grain Co, 30 Colo App 21; 488 P2d 103 (1971); Aetna Cas & Surety Co v Jones, 220 Conn 285; 596 A2d 414 (1991); Coca-Cola Co v Pepsi Cola Co, 172 A 260 (Del Super, 1934); Ellis v Crockett, 51 Hawaii 86; 451 P2d 814 (1969); Anderson v Pocatello, 112 Idaho 176; 731 P2d 171 (1986); White v Allstate Ins Co, 605 NE2d 141 (Ind, 1992); Pat Perusse Realty Co v Lingo, 249 Md 33; 238 A2d 100 (1968); Home Owners Fed S&L Ass’n v Northwestern Fire & Marine Ins Co, 354 Mass 448; 238 NE2d 55 (1968); Gammel v Ernst & Ernst, 72 NW2d 364 (Minn, 1955); Thomas M Mclnnis & Associates, Inc v Hall, 318 NC 421; 349 SE2d 552 (1986); Sanderson v Balfour, 109 NH 213; 247 A2d 185 (1969); Silva v State, 106 NM 472; 745 P2d 380 (1987); Ettin v Ava Truck Leasing, Inc, 53 NJ 463; 251 A2d 278 (1969); Posternack v American Cos Co, 421 Pa 21; 218 A2d 350 (1966); Black Hills Jewelry Mfg Co v Felco Jewel Industries, Inc, 336 NW2d 153 (SD, 1983); Crowall v Heritage Mut Ins Co, 118 Wis 2d 120; 346 NW2d 327 (1984). See also anno: Mutuality of estoppel as prerequisite of availability of doctrine of collateral estoppel to a stranger to the judgment, 31 ALR3d 1044, § 4, pp 1072-1073; 47 Am Jur 2d, Judgments, § 648, pp 54-55; 18 Moore’s Fed Practice (3d ed), Issue preclusion and collateral estoppel, § 132.04[2][b]-[c][ii], pp 156-162.

 Because nonparties, such as defendant, receive no notice of third-party actions and thus are generally unaware of such actions, we are perplexed as to how “abandoning the mutuality requirement under these circumstances would . . . reward defendant’s gamesmanship.” Post at 701 (emphasis added). If plaintiff believed, as the dissent contends, that defendant, by not requesting to be joined in the third-party action, was employing “gamesmanship,” plaintiff had the authority to attempt to join defendant. MCR 2.206(A)(1). However, because “there are rarely tactical reasons for refraining from joining all potential defendants,” we believe that it was plaintiff who, by choosing not to attempt to join defendant as a party was employing “gamesmanship” and was planning to use the instant action, if necessary, “merely [as] a renewal of [his] previously unsuccessful effort.” 1 Restatement Judgment, 2d, ch 3, § 29, p 301 reporter’s note. See also Ritchie v Landau, 475 F2d 151, 156 n 5 (CA 2, 1973).

 Given that there are over sixty years of experience regarding the defensive use of collateral estoppel in the absence of mutuality, see Bern-hard, supra, the dissent’s fear that the “ ‘full and fair’ ” standard will “ ‘open the Pandora’s box,’ ” causing judicial resources to be spent litigating whether a prior adjudication was “full and fair,” appears unfounded. Post at 700 (citation omitted).

 The test that we set forth today is fully consistent with our understanding of collateral estoppel as “strikpng] a balance between the need to eliminate repetitious litigation and the interest in affording litigants a full and fair adjudication of the issues involved in their particular claims.” Post at 695. Such test serves both these interests without diluting either.

 “[W]e should firmly keep in mind that we axe considering the situation where the [plaintiff] was plaintiff in the prior suit and chose to litigate at that time and place. Presumably, he was prepared to litigate and to litigate to the finish against the defendant [involved in the prior suit]. [Accordingly,] there is no reason to suppose that [the plaintiff] would face either surprise or unusual difficulties in getting all relevant and probative *694 evidence before the court in the first litigation.” Blonder-Tongue, supra at 332.

 We believe that the instant decision should be given full retroactive effect because, contrary to the dissent’s assertion, this decision does not “represent!] a sweeping change in the law.” Post at 702. Rather, there is no previous decision of this Court that has decided whether mutuality should apply in the defensive context. See ns 5-6.