*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

ESTATE OF ROBERT J. ROMIG, by BOBBIE JO KOOMAN, Personal Representative, and TERRY ROMIG,

Plaintiffs-Appellants,

v

BOULDER BLUFF CONDOMINIUMS UNITS 73-123, 125-146, INC., doing business as BOULDER BLUFF ESTATES CONDOMINIUM ASSOCIATION, and GEROW MANAGEMENT COMPANY, INC.,

Defendants-Appellees.

FOR PUBLICATION
October 27, 2022
9:00 a.m.

No.   347653
Ottawa Circuit Court
LC No.   18-005518-NO

ESTATE OF ROBERT J. ROMIG, by BOBBIE JO KOOMAN, Personal Representative, and TERRY ROMIG,

Plaintiffs-Appellants,

v

BOULDER BLUFF CONDOMINIUMS UNITS 73-123, 125-146, INC., doing business as BOULDER BLUFF ESTATES CONDOMINIUM ASSOCIATION, "BOULDER BLUFF ESTATES CONDOMINIUM ASSOCIATION," and GEROW MANAGEMENT COMPANY, INC.,

Defendants-Appellees.

No.   348254
Ottawa Circuit Court
LC No.   18-005518-NO

-1-

ON REMAND

Before: LETICA, P.J., and K. F. KELLY and REDFORD, JJ.

PER CURIAM.

These cases return to us on remand from the Michigan Supreme Court. Plaintiffs, Bobby Jo Kooman, as personal representative for the estate of Robert J. Romig, and Terry Romig, brought suit in state court against defendants Gerow Management Company, Inc., Boulder Bluff Condominiums, Units 73-123, 125-146, Inc., doing business as Boulder Bluff Estates Condominium Association, and Boulder Bluff Estates Condominium Association, alleging violations of the Persons with Disabilities Civil Rights Act (the PWDCRA), MCL 37.1101 *et seq.*[1] In a published, per curiam opinion, we affirmed the trial court's order granting partial summary disposition under MCR 2.116(C)(8) and (C)(10) in favor of defendants because, having already completed a "real estate transaction" before the claims at issue arose, plaintiffs did not have a cause of action under the PWDCRA. *Estate of Romig by Kooman v Boulder Bluff Condos Units 73-123, 125-146, Inc*, 334 Mich App 188, 197-204; 964 NW2d 133 (2020).

In lieu of granting plaintiff's application for leave to appeal, the Michigan Supreme Court vacated this Court's opinion and remanded the case to us "to address the issue of whether the state court proceedings in this matter are barred by collateral estoppel" because of issues determined in collateral proceedings previously brought by plaintiffs in federal district court. *Estate of Romig by Kooman v Boulder Bluff Condos Units 73-123, 125-146, Inc*, ___ Mich ___; 974 NW2d 826 (2022). We now conclude that the state court proceedings under the PWDCRA are barred by collateral estoppel and, therefore, affirm the orders of the trial court granting partial summary disposition in defendants' favor.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case stems from the decision made by defendants to deny Terry and Robert Romig's request to install a handrailing alongside their front porch stairs outside of their condominium unit. Although defendants eventually approved the request after approximately two months, Robert fell down the stairs twice in the interim. Plaintiffs initially brought suit in federal court, alleging state and federal causes of action. The federal district court did not take supplemental jurisdiction over the state-law claims. It did ultimately conclude, however, that defendants did not violate the Fair Housing Act, 42 USC 3601 *et seq.*, because plaintiffs could not establish that the delay between the first request for the railing and defendants' eventual approval was unreasonable. *Kooman for Estate of Romig v Boulder Bluff Condos, Units 73-123, 125-146, Inc*, unpublished opinion of the United States District Court for the Western District of Michigan, issued February 10, 2020 (Case No. 1:18-CV-637), pp 8-11. The Sixth Circuit affirmed. *Kooman v Boulder Bluff Condos*, 833 F Appx 623 (CA 6 2020).

While plaintiffs litigated their federal cause of action in the federal district court, plaintiffs brought suit in state court alleging state-law violations of the PWDCRA and Condominium Act, 559.101 *et seq.* The trial court granted partial summary disposition under MCR 2.116(C)(8) in favor of defendants,

---

[1] Plaintiffs also brought suit under the Condominium Act, 559.101 *et seq.*, which is not relevant to this appeal.

concluding plaintiffs failed to state a claim because defendants could not violate the PWDCRA unless the alleged discriminatory act was done in connection with a real estate transaction. Because plaintiffs already obtained their interest in the condominium at the time the request for the railing was denied, defendants' decision was not made in connection with a real estate transaction. This Court affirmed. *Estate of Romig*, 334 Mich App at 197-204.

Plaintiffs then sought leave with the Michigan Supreme Court which, in lieu of granting, first remanded the case back to the trial court for findings of fact on the issue of whether plaintiffs' state-law claims were barred by collateral estoppel. After the trial court submitted its findings, the Michigan Supreme Court vacated this Court's opinion and remanded the case to us to consider the issue in light of the trial court's findings of fact.

## II. DISCUSSION

Operation of collateral estoppel presents a question of law. *Rental Props Owners Ass'n v Kent Co Treasurer*, 308 Mich App 498, 526; 866 NW2d 817 (2014). "Collateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties when the prior proceeding culminated in a valid final judgment and the issue was actually and necessarily determined in that prior proceeding." *Id*. at 528. For collateral estoppel to bar plaintiffs' claims under the PWDCRA, the following three elements must be met: "(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *William Beaumont Hosp v Wass*, 315 Mich App 392, 398; 889 NW2d 745 (2016) (quotation marks and citation omitted). "This doctrine is strictly applied in that [t]he issues [in both cases] must be identical, and not merely similar." *Keywell & Rosenfeld v Bithell*, 254 Mich App 300, 340; 657 NW2d 759 (2002) (quotation marks and citation omitted; alteration in original). "The previous litigation must have presented a 'full and fair' opportunity to litigate the issue presented in the subsequent case." *Id*. Lastly

> [m]utuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue that party must have been a party, or in privy to a party, in the previous action. In other words, [t]he estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him. [*Monat v State Farm Ins Co*, 469 Mich 679, 682-684; 677 NW2d 843 (2004) (alteration in original).]

The only element of collateral estoppel that is at issue here is the first, i.e., whether questions of fact essential to plaintiffs' PWDCRA claims have already been actually litigated and determined by a valid and final judgment in the federal litigation. In the first count of their state court complaint, plaintiffs alleged defendants violated the PWDCRA "by unreasonably denying and causing an unreasonable delay, failure, and refusal to permit Plaintiffs to make a reasonable disability modification, at their own expense, to their residence (Unit) which they owned and/or occupied at all relevant times." As relevant to this count, the federal district court stated:

> The period between the June 17th request and the August 23rd approval was not unreasonable. The starting point is what Plaintiffs provided to the housing provider. Here, the nondescript email that Ms. Kooman sent to Ms. Biegalle on June 17th made no mention of her father. Indeed, it provided no reason at all for the railing request. And regardless of what Ms. Kooman may have told Ms. Biegalle before sending the email, Ms. Kooman's

deposition testimony establishes that she knew, after speaking with Ms. Biegalle, that she had to submit a written request to the Boulder Bluff Estates Board of Directors. Accordingly, Ms. Kooman herself contributed to much of the delay by failing to provide a complete picture when she first submitted her request to the Board of Directors. True, Ms. Kooman did mention her father in the June 28th email, but that email is nebulous at best. It mentions only a fall, and Ms. Kooman's belief that the railing would prevent injuries. It says nothing about her father's condition. Moreover, the record reflects that once the Board of Directors received a clearer picture of the situation, including a doctor's note from Mr. Romig's physician, the Board acted quickly to approve the request. All things considered, the Board could have perhaps been more proactive in ferreting out the reason for the request, but it did not act unreasonably in issuing an initial decision based on the information at hand, and then swiftly approving the request once it received more information.

In support of their argument, Plaintiffs largely point to the letter that was first sent by Ms. Biegalle that denied the request. They say it conclusively established that the Board of Directors denied a request by a disabled individual for a reasonable modification. But reality matters more than labels. The reality here is that it look less than two months to approve the railing request. When the Board initially responded to Ms. Kooman's request it had no written communication from Ms. Kooman, Ms. Romig, or Mr. Romig, that the request for the railings related to Mr. Romig's disability. Nor did it have a doctor's note or any other medical information on Mr. Romig. The interactive process then continued, and further information was submitted, including a doctor's note, leading to an approval of the request after less than a month after the Board received concrete medical information. All this shows that the Board of Directors acted expeditiously once it was able to perform a meaningful review. [*Kooman for Estate of Romig*, unpub op at 9 (citations omitted).]

The federal district court's findings with respect to Count I collaterally estop plaintiffs from asserting a violation of the PWDCRA on the basis that defendants unreasonably denied and delayed the installation of the railing. The district court specifically concluded that "[t]he period between the June 17th request and the August 23rd approval was not unreasonable." *Id*. The court reasoned that defendants were not initially provided with sufficient information to understand the character of plaintiffs' request but, once the information was obtained, defendants "acted expeditiously once it was able to perform a meaningful review." *Id*. Thus, plaintiffs can no longer assert that the delay in question was unreasonable, which is the essential allegation under Count I of their complaint.

In the second count, plaintiffs alleged defendants violated the PWDCRA "by unlawfully discriminating in the terms, conditions, privileges of sale or rental of a dwelling, or in the provision of services and facilities in connection with such dwelling, because of a disability of that person, a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available, or any person associated with that person." As relevant to this count, the district court stated:

Plaintiffs have not identified any evidence from which a reasonable jury could conclude they have established a prima facie case of disparate treatment. They have pointed to no direct evidence of intentional discrimination, nor have they shown any circumstantial evidence to create an inference of discrimination. There is no evidence of any animus towards Mr. or Ms. Romig because of Mr. Romig's disability in the available

-4-

email discussion. The focus instead was on maintaining consistent aesthetics and the soundness of the building. The individuals who were most familiar with Mr. Romig and his family—Ms. Biegalle and Mr. Carpenter—were favorable to his position.

Even if Plaintiffs had set out a *prima facie* case, they have not shown the proffered reasons in the initial response was pretext for unlawful discrimination. Plaintiffs suggest that the fact that the Board of Directors previously approved railings and ramps demonstrates that the reason their request was denied was because of Mr. Romig's disability. But Plaintiffs fail to demonstrate that the previous approval of these requests is somehow evidence of discrimination. The record, moreover, contains no specifics with respect to these alterations. No information regarding when they were installed, where on the property they were installed, and how and why the installations came about is in the record. Indeed, the most natural reading of the record is that these were modifications that the Board of Directors had approved for other disabled individuals. Jeff Carpenter in an email on June 27, 2016, stated that the Board had installed porch rails on a number of other units, and that he thought a lot the residents were aging and would need similar installations. He suggested installing a "handicap" ramp, noting the Board had approved such requests in its recent past. Accordingly, the fact that the Board may have installed railings and ramps in the past does not appear to support Plaintiffs' claim of disability discrimination. If anything, it shows the Board of Directors would include modification requests, when the Board had complete information (and as later demonstrated by the Board's subsequent approval of the Romigs' request). [*Id.* at 11 (citation omitted; emphasis in original).]

Like Count I, the federal district court's findings of fact collaterally estop plaintiffs from asserting in Count II that defendants discriminated against Robert on the basis of a disability. Plaintiffs failed to make a prima facie case because they had no direct or circumstantial evidence of discrimination. Rather, the trial court found that the reason for the denial was aesthetics of the condominium units. Likewise, the fact that defendants had previously allowed handrailings to be installed did not evidence discriminatory intent.

As we explained in our previous opinion, the merits of plaintiffs' PWDCRA claims are dubious because plaintiffs must be able to show that the alleged discrimination occurred in the context of a "real estate transaction." See MCL 37.1502. We need not again reach that issue, however, because we conclude that plaintiffs are collaterally estopped from asserting such claims.

Affirmed.

/s/ Anica Letica
/s/ Kirsten Frank Kelly
/s/ James Robert Redford