*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHARLETTA REED,

      Plaintiff-Appellee,

v

CITY OF DETROIT,

      Defendant-Appellant,

and

SERGEANT RONALD GIBSON,

      Defendant.

UNPUBLISHED
November 9, 2023

Nos. 362551 & 362600
Wayne Circuit Court
LC No. 22-005267-CZ

Before: CAVANAGH, P.J., and RIORDAN and PATEL, JJ.

PER CURIAM.

In this consolidated appeal,[1] in Docket No. 362551, defendant City of Detroit ("Detroit") appeals as of right the trial court's order denying its motion for summary disposition pursuant to MCR 2.116(C)(7) on the basis of governmental immunity. In Docket No. 362660, Detroit appeals by leave granted the same order denying its motion for summary disposition pursuant to MCR 2.116(C)(7) on the basis that plaintiff Charletta Reed ("plaintiff") failed to establish that she has a claim for sexual harassment under the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq.*, and alternatively, that her claim is barred by collateral estoppel.

Briefly stated, defendant Sergeant Ronald Gibson ("Gibson") began a sexual relationship with plaintiff after meeting her while performing his duties as a Detroit Police Officer in December 2017. The relationship ended in February 2018. Plaintiff subsequently sued Detroit, its police department, and Gibson in federal district court, alleging that Gibson coerced her into the sexual

---

[1] *Reed v Detroit*, unpublished order of the Court of Appeals, entered September 20, 2022 (Docket No. 362600).

relationship by abusing his authority as a police officer and, consequently, that these defendants violated federal and state laws, including ELCRA. The federal court dismissed the federal claims on the basis that Gibson did not act "under color of state law" because the sexual relationship was private and unrelated to his duties as a police officer. The federal court declined to exercise jurisdiction over the state claims.

After the federal case was dismissed, plaintiff filed the instant action in Wayne Circuit Court, seeking to pursue her ELCRA claims against Detroit and Gibson. Detroit argued that it was entitled to summary disposition under MCR 2.116(C)(7), and we agree with Detroit that the doctrine of collateral estoppel bars the instant action. Therefore, we reverse the trial court and remand to that court for entry of summary disposition in favor of Detroit.

## I. BACKGROUND FACTS

On May 4, 2022, plaintiff filed her complaint in Wayne Circuit Court against Detroit and Gibson, alleging as follows. On December 25, 2017, the father of plaintiff's children caused a domestic incident with plaintiff. Gibson was one of the police officers who responded to the incident. He personally conversed with plaintiff and, after learning that she was "working to get a cabaret license," informed her that he could assist her in that regard. About one hour after leaving plaintiff's home, Gibson called plaintiff and told her that she had an outstanding warrant from 2010. Plaintiff was "extremely concerned" and accepted Gibson's offer to come to her house the following day to discuss the outstanding warrant. When he did so, he informed plaintiff that he could resolve her warrant and domestic-dispute issues. During this conversation, Gibson began rubbing plaintiff's shoulders. "Plaintiff felt like she was unable to leave and when she told Defendant Gibson that she did not want to engage with him sexually, he said that it was the only way she would not be arrested because of her warrant and domestic dispute issues." Plaintiff eventually complained to a Detroit Police Department lieutenant about the matter but, nonetheless, plaintiff alleged "Defendant Gibson continued to unlawfully detain Plaintiff and tell her that if she did not engage with him sexually that she could still be arrested for the outstanding warrant." Plaintiff accordingly alleged that Detroit and Gibson violated ELCRA by depriving her of "public services . . . based on her sex," and she sought damages for such issues as "[p]ain and suffering."

On May 23, 2022, Detroit filed its motion for summary disposition pursuant to MCR 2.116(C)(7) in lieu of an answer. Detroit argued that (1) it is protected by governmental immunity from ELCRA claims seeking monetary damages, (2) plaintiff does not have an ELCRA claim "because she was not denied a public accommodation due to discrimination or due to sexual harassment,"[2] and (3) collateral estoppel bars the instant action because "the federal court determined that Plaintiff and Defendant Gibson engaged in a consensual sexual relationship that did not involve Gibson's official duties as a police officer."

---

[2] The parties occasionally refer to "public accommodation" and/or "public service" as the protected right at issue. As explained *infra*, the term "public service" is applicable to governmental entities. The term "public accommodation" is part of a different term of art in civil-rights cases, "place of public accommodation." Federal and state laws ordinarily refer to "place of public accommodation" in the context of private businesses.

The primary documentary evidence that Detroit attached to its motion and brief was a 47-page Internal Affairs Report dated February 11, 2020, concerning the matter. The report explains that on February 16, 2018, plaintiff contacted Internal Affairs to report that Gibson "had coerced her into having sex with him, by telling her that she had warrants for her arrest." It further explains that on April 4, 2018, a warrant request identifying Gibson was sent to the Wayne County Prosecutor's Office, Domestic Violence Unit, for review as to whether he should be charged. On June 1, 2018, the warrant request was denied "because Ms. Reed failed to co-operate with the investigation and refused to be interviewed by both the prosecutor and I [the author of the Internal Affairs Report]." The warrant request was then immediately referred to the Public Integrity Unit of the same office, and it was again denied on August 1, 2019.

The report concluded that "[t]he text messages between Sergeant Gibson and Ms. Reed showed a consensual relationship between them. Both Ms. Reed and Sergeant Gibson initiated text messaging between each other, and on more than one occasion Ms. Reed told Sergeant Gibson that she loved him and asked him to be with her." The report further concluded:

> The investigation revealed no evidence to show that Sergeant Gibson manipulated or forced Ms. Reed into a relationship with him. There was no evidence to show that he exchanged sex for not arresting her on her outstanding warrants. The investigation revealed that Ms. Reed made numerous attempts for Sergeant Gibson to clear up her warrants but he did not assist her in any way.

Thus, the report found that the allegation of sexual assault was "UNFOUNDED." However, the report found that there was "SUSTAINED MISCONDUCT" concerning allegations that Gibson falsified his activity logs to indicate that he was performing his duties when, in fact, he was with plaintiff. Gibson ultimately resigned in lieu of being fired because he falsified his activity logs to conceal his relationship with plaintiff.

Detroit also included with its motion and brief for summary disposition the opinion of the federal district court in the previous litigation involving these parties. In its opinion, the federal court explained that plaintiff maintained the following three claims against the defendants: (1) a 42 USC 1983 claim for violation of her constitutional rights, i.e., a claim that the defendants violated her constitutional rights while acting under color of state law; (2) a *Monell*[3] claim against Detroit for maintaining an improper policy or custom; and (3) ELCRA claims. The federal court first concluded that the 42 USC 1983 claim against Gibson failed as a matter of law because he was not acting under color of state law, reasoning as follows:

> Conduct occurs under color of state law when the actor intends to act in an official capacity or to exercise official responsibilities pursuant to state law. Courts must consider the totality of the circumstance in determining whether an officer was acting under color of law at the time of the alleged constitutional violation. The fact that a police officer is on or off duty, or in or out of uniform is not controlling. It is the nature of the act performed which determines whether the

---

[3] *Monell v Dep't of Social Servs of City of New York*, 436 US 658; 98 S Ct 2018; 56 L Ed 2d 611 (1978).

officer has acted under color of law. For that reason, acts of police officers in the ambit of their personal, private pursuits fall outside of 42 U.S.C. § 1983.

As the Sixth Circuit put it, a defendant's private conduct, outside the course or scope of his duties and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law. Thus, if the challenged conduct is not related in some meaningful way to the actor's governmental status or to the performance of his duties, then the act was not under the color of state law. Here, even if Gibson were to force Plaintiff to have a sexual relationship with him, his conduct would not occur under the color of state law for three reasons.

First, the only time that Gibson went to Plaintiff's house on official police business was the first night—December 26—in response to the domestic disturbance call. Plaintiff admitted that Gibson made no sexual pass that night. It follows that no sexual act occurred when Gibson went to her house on official police business.

Second, all the other alleged sexual acts occurred outside Gibson's official police business. Admittedly, Gibson was on duty and in his uniform when the alleged sexual acts occurred. But merely being on duty and in uniform is not enough to create a genuine issue about whether Gibson, while under the color of state law, forced Plaintiff to do sexual acts with him. Without more, no genuine issue exists about whether the alleged sexual acts related to Gibson's official police duties.

As the body camera video showed, Plaintiff made no complaint about the domestic disturbance on December 26. Gibson's official police duty to Plaintiff—to respond to her domestic disturbance call—thus ended after he left her house that night. Gibson's warrant search and later call to Plaintiff about her outstanding warrants were unrelated to his official police duties. For one, without a complaint from Plaintiff, the Police Department had no policy for Gibson to follow up on the warrants. For another, after discovering the warrants, Gibson neither had the desire to arrest Plaintiff nor to influence officials to resolve the warrants. And Gibson's visits to Plaintiff's house always began by her invitation. After all, if Gibson were on official police business, then Gibson could show up uninvited to Plaintiff's house. In short, Gibson went over to Plaintiff's house to pursue his purely private interests—not police interests.

\* \* \*

That said, at least one lower court has found that there was enough evidence to show police officers had acted under the color of state law while they allegedly sexually assaulted a woman on duty. The plaintiff in *Linthicum* had no preexisting relationship with the officers, and thus it was far more likely that she would have not trusted them to escort her home had she not recognized them as police officers, understood courtesy rides to be within the scope of their authority, and placed some faith in those beliefs. But Gibson's conduct is a far cry from the officers' conduct

-4-

in *Linthicum*. To compare, Gibson and Plaintiff had started a friendship; the two conversed over phone and text—including the receipt of a racy picture Plaintiff sent to Gibson—before the alleged sexual acts began. And Plaintiff never explained that she believed Gibson had to help her with the warrants as part of his police duties. In sum, Gibson was not acting under his official police duty when the alleged sexual acts occurred.

Third, Gibson's status as a police officer was unrelated to whether he forced Plaintiff to do sexual acts with him. Plaintiff conceded that Gibson neither threatened to arrest her based on the outstanding warrants nor take any other police action against her. At most, Gibson exploited his friendship with Plaintiff—not his authority as a police officer—to allegedly force her into a sexual relationship. Gibson used his prior knowledge of the system and acted as a friend who would help Plaintiff resolve her warrant issues—conduct that is functionally equivalent to that of any private citizen. And the actions that Gibson offered to Plaintiff included only telling her that she had warrants and offering to drive her to the courthouse so that she could resolve warrants. To that end, Plaintiff claimed that Gibson did not help her—let alone use his police authority to help her—with the probation issues or outstanding warrants. To be sure, Plaintiff's breakup text sent to Gibson conceded that he was using her "like everyone else"—not threatening to use his unique police power against her. And even though Gibson's official police duties introduced him to Plaintiff, he did not act under the color of state law when the alleged sexual acts occurred because he acted wholly independent of his official duties.

All told, Gibson's case is even more clear cut than another Sixth Circuit case that held public officials were not acting under the color of state law despite threatening to sue [the] plaintiffs. . . . Here, Plaintiff explained that Gibson never threatened her let alone threatened to use his police authority against her. Even if Gibson were to force Plaintiff into a sexual relationship with him while on duty and in uniform, no evidence shows that Gibson intended to act in his official capacity or that he coerced Plaintiff to have sex with him based on his authority. For those three reasons, no genuine issue of material fact shows that Gibson acted under the color of state law when the alleged sexual acts occurred. [*Reed v Detroit*, 2022 WL 493691, at *4-6 (ED Mich, 2022) (cleaned up).]

Next, the federal court held that "[b]ecause no material fact shows that Gibson committed an underlying constitutional violation under the color of state law, the Court must dismiss the *Monell* claims against the City." *Id*. at *6. Finally, the federal court "decline[d] to exercise supplemental jurisdiction over the remaining state law claims" because it lacked original jurisdiction over those claims, and the case was less than two years old. *Id*. at *7. The federal court accordingly dismissed the ELCRA claims without prejudice, dismissed the federal claims with prejudice, and closed the case. *Id*.[4]

---

[4] The federal decision was based on Fed R Civ P 56(a), the federal analog to MCR 2.116(C)(10).

On June 30, 2022, plaintiff filed her response to Detroit's motion for summary disposition. In her response, plaintiff argued that (1) caselaw from this Court clearly establishes that governmental immunity is not a defense to ELCRA claims seeking monetary damages; (2) plaintiff has an ELCRA claim for quid-pro-quo sexual harassment because the evidence, particularly plaintiff's deposition in the federal case, shows that Gibson used plaintiff's outstanding warrants to threaten her into sex; and (3) collateral estoppel does not bar plaintiff's ELCRA claim because the federal court only found that Gibson did not act under color of state law, which is not an element of an ELCRA claim.

On July 21, 2022, the trial court held a hearing on the motion for summary disposition. After the parties' respective arguments, the trial court denied the motion, stating as follows:

> I understand your argument. Let me just – so the Court is citing Doe versus Department of Corrections, which is 323 Mich App 479, which states otherwise, other than the City's position that GTLA bars this action. Under that case it does not.

> Leave to appeal, I should note, to the Michigan Supreme Court was denied in that case leaving intact the finding that GTLA does not bar an action under ELCRA.

> Defendant also argues plaintiff does not have factual support for a case, but this motion is not a (C)(10). It's a governmental immunity motion. I believe it was thoroughly litigated in the federal court so I don't know if more discovery is needed here.

> But I am going to deny defendant's motion based on its claim that governmental immunity bars the action. It's denied without prejudice to the extent that the facts developed in the federal case show that plaintiff does not have a civil rights claim.

> If the discovery is still needed, I'll need to know. But if the issue – if the issue is ripe for a (C)(10) motion, then I would ask the parties to re-brief it, specifically on whether there is factual support for plaintiff's claim.

The trial court did not specifically mention the collateral-estoppel issue, nor did counsel for Detroit ask for a specific ruling on the matter. The trial court entered an order memorializing its decision a few days later.

In Docket No. 362551, Detroit filed a claim of appeal from the trial court's order to the extent that it denied Detroit governmental immunity. In Docket No. 362600, Detroit filed an application for leave to appeal from the trial court's order to the extent that it ruled that plaintiff has an ELCRA claim and that it is not barred by collateral estoppel. This Court granted the application and consolidated the two appeals. *Reed v Detroit*, unpublished order of the Court of Appeals, entered September 20, 2022 (Docket No. 362600).

## II. COLLATERAL ESTOPPEL

Detroit argues that collateral estoppel bars the instant action because the federal court found that Gibson did not use his authority as a police officer to coerce plaintiff into sex. In other words, Detroit argues that the federal court's determination that Gibson did not act "under color of state law" collaterally estops plaintiff from establishing her ELCRA claim in this case. We agree.

MCR 2.116(C)(7) provides that summary disposition is appropriate "because of . . . prior judgment." "This Court . . . reviews de novo motions for summary disposition under MCR 2.116(C)(7)." *Tellin v Forsyth Twp*, 291 Mich App 692, 698; 806 NW2d 359 (2011). "In reviewing a (C)(7) motion, a court must accept all well-pleaded allegations as true and construe them in favor of the nonmoving party." *Id.* "The application of collateral estoppel is a legal issue that is . . . reviewed de novo." *Radwan v Ameriprise Ins Co*, 327 Mich App 159, 164; 933 NW2d 385 (2018).

MCL 37.2302(a) of ELCRA provides that "a person shall not . . . [d]eny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status." MCL 37.2301(b) provides, " 'Public service' means a public facility, department, agency, board, or commission, owned, operated, or managed by or on behalf of the state, a political subdivision, or an agency thereof or a tax exempt private agency established to provide service to the public . . . ."

Further, MCL 37.2103(k) of ELCRA provides, in relevant part:

> Discrimination because of sex includes sexual harassment. Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:
>
> (*i*) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment, public accommodations or public services, education, or housing.
>
> (*ii*) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment, public accommodations or public services, education, or housing.[5]

These two subdivisions "describe quid pro quo sexual harassment." *Hamed v Wayne Co*, 490 Mich 1, 9; 803 NW2d 237 (2011). Quid-pro-quo sexual harassment requires a showing of the following two elements:

> A plaintiff alleging quid pro quo sexual harassment affecting public services must show by a preponderance of the evidence (1) that he or she was subjected to

---

[5] When plaintiff filed her lawsuit, subsection (i) was the relevant subsection defining "sexual harassment." See 1999 PA 202. MCL 37.2103 was recently amended by 2023 PA 45, and for ease of discussion, we refer to the present statute.

any of the types of unwelcome sexual conduct or communication described in the statute and (2) that the public service provider or the public service provider's agent made submission to the proscribed conduct a term or condition of obtaining public services or used the plaintiff's submission to or rejection of the proscribed conduct as a factor in a decision affecting his or her receipt of public services. [*Id.* at 10.]

MCL 37.2103(h) provides that "person," as used in ELCRA, includes "this state or a political subdivision of this state or an agency of this state." Finally, MCL 37.2801(1) provides that "[a] person alleging a violation of this act may bring a civil action for appropriate injunctive relief or damages, or both."

In this case, to prove her quid-pro-quo ELCRA claim, plaintiff must show that "the public service provider or the public service provider's agent made submission to the proscribed conduct a term or condition of obtaining public services or used the plaintiff's submission to or rejection of the proscribed conduct as a factor in a decision affecting his or her receipt of public services." *Hamed*, 490 Mich at 10. This is the second element of her claim.

The elements of collateral estoppel are as follows:

(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel. [*Monat v State Farm Ins Co*, 469 Mich 679, 683-684; 677 NW2d 843 (2004) (cleaned up).]

"Mutuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue that party must have been a party, or in privy to a party, in the previous action." *Id.* at 684 (cleaned up).

There is no dispute that the three elements of collateral estoppel are nominally satisfied because the issue of whether Gibson acted "under color of state law" was actually litigated and determined by a valid and final judgment in the federal court, the parties had a full and fair opportunity to litigate the issue in the federal court, and there is mutuality of estoppel because the parties are the same. See *Detroit v Qualls*, 434 Mich 340, 356 n 27; 454 NW2d 374 (1990) (explaining that summary judgment has collateral-estoppel effect).

The underlying question in this case concerns the scope of the "issue" for the purposes of collateral estoppel, i.e., whether the federal court's determination that Gibson did not act "under color of state law" has preclusive effect with regard to plaintiff's quid-pro-quo ELCRA claim in this case. Compare *McGuire v Pittsburgh*, 285 A3d 887 (Pa, 2022) (addressing whether the federal jury's finding that the police officer acted under color of state law had preclusive effect in the subsequent state case concerning whether the police officer acted within the "scope of his office or duties" for the purposes of the Political Subdivision Tort Claims Act).

The difficulty here concerns the proper framing of the "issue" that may have preclusive effect. Certainly, "acting under color of state law" is not a required factual showing for a quid-pro-quo ELCRA claim. However, there are clear and substantial similarities between these two cases. In particular, plaintiff argued in the federal court that Gibson coerced her into sex by using

his authority as a police officer to threaten her with the outstanding warrants. This use of authority would be "under color of state law" for the purposes of 42 USC 1983. That essentially is what plaintiff argues in this case—that Gibson, explicitly or implicitly, indicated to her that he would pursue her outstanding warrants in his capacity as a police officer unless she had sex with him.[6] This is prohibited "sexual harassment" under MCL 37.2103(k) of ELCRA.

According to the Second Restatement of Judgments, framing the issue is "[o]ne of the most difficult problems" in deciding whether collateral estoppel applies:

> *c. Dimensions of an issue.* One of the most difficult problems in the application of the rule of this Section is to delineate the issue on which litigation is, or is not, foreclosed by the prior judgment. The problem involves a balancing of important interests: on the one hand, a desire not to deprive a litigant of an adequate day in court; on the other hand, a desire to prevent repetitious litigation of what is essentially the same dispute. When there is a lack of total identity between the particular matter presented in the second action and that presented in the first, there are several factors that should be considered in deciding whether for purposes of the rule of this Section the "issue" in the two proceedings is the same, for example: Is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first? Does the new evidence or argument involve application of the same rule of law as that involved in the prior proceeding? Could pretrial preparation and discovery relating to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second? How closely related are the claims involved in the two proceedings? [1 Restatement Judgments, 2d, ch. 3, Former Adjudication, § 27, *comment c*.]

Applying these four factors, we conclude that plaintiff is collaterally estopped from showing the second element of her ELCRA claim.

The first factor, whether there is a "substantial overlap" between the evidence and argument presented in the two cases, weighs in favor of collateral estoppel because plaintiff argued in both cases that Gibson used his authority as a police officer to coerce her into sex, and she

---

[6] On appeal, plaintiff summarily suggests another quid-pro-quo by Gibson—that Gibson offered to help her with her domestic-dispute issues in exchange for sex. However, the overwhelming discussion in these two cases, both by the federal court in its decision and by the parties themselves in their respective briefs in this case, concern the quid-pro-quo as it relates to the outstanding warrants. In any event, the only evidence that plaintiff offers in support of a domestic dispute quid-pro-quo is her deposition testimony in which she briefly refers to a February 15, 2018 text message from Gibson stating that he helped her with her domestic-dispute issues.

Neither the text message itself nor plaintiff's brief deposition testimony referring to the text message establish that Gibson coerced her into a sexual relationship in exchange for assistance with her domestic-dispute issues. Accordingly, and because both the federal and state proceedings have focused upon the outstanding warrant quid-pro-quo, we limit our discussion to that issue.

introduced evidence in both cases to that effect. In other words, the argument in the federal court that Gibson acted "under color of state law" was essentially the same argument that plaintiff now raises in this case, that Gibson used his authority as a police officer to sexually harass her. Moreover, plaintiff has not identified any additional evidence that might suggest a fundamentally different outcome in this case.

The second factor, whether the new evidence or argument involves application of the same rule of law as in the prior case, weighs against collateral estoppel. In the federal case, the federal court applied the rule of law as to "acting under color of state law." In this case, in contrast, plaintiff argues that Michigan courts should apply the rule of law as to ELCRA claims. There is no dispute that the federal law regarding "acting under color of state law" is different than Michigan law regarding ELCRA, which bars individuals from being denied a public service because of their sex, including a prohibition against sexual harassment.

The third factor, whether pretrial proceedings in the earlier case could "reasonably be expected to have embraced the matter" in the second case, weighs in favor of collateral estoppel. Indeed, plaintiff actually maintained ELCRA claims in her federal case, and those claims were essentially the same claims that plaintiff now maintains in this case.[7] Moreover, given that federal courts have limited jurisdiction over state-law claims, plaintiff presumably was aware that her case could be divided, and that findings in the federal court could have preclusive effect in possible subsequent proceedings in state court.

The fourth factor, the closeness of the relationship between the claims in the two cases, weighs in favor of collateral estoppel. As noted, the arguments that plaintiff presumably advanced in the federal case as to why Gibson acted "under color of state law" are the same arguments that plaintiff advances in this case as to why Gibson engaged in prohibited "sexual harassment" under ELCRA. In both cases, plaintiff asserted that Gibson threatened to pursue her outstanding warrants in his capacity as a police officer unless she engaged in a sexual relationship with him. There is no dispute that this argument, if true, would establish that Gibson violated both federal and state law.

Ultimately, the federal court explained that "a defendant's private conduct, outside the course or scope of his duties and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law," and that "if the challenged conduct is not related in some meaningful way to the actor's governmental status or to the performance of his duties, then the act was not under the color of state law." Applying these principles to the facts of the case, the federal court determined that Gibson did not act under color of state law. In doing so, it noted that "Plaintiff conceded that Gibson neither threatened to arrest her based on the outstanding warrants nor take any other police action against her." Simply put, the federal court determined that Gibson's conduct was unaided by explicit or implicit invocations of his police authority, was unrelated to his duties as a police officer, and that he did not threaten to take any police action against plaintiff. In the instant case, plaintiff would essentially have to show that Gibson, explicitly or implicitly, threatened to take police action against her in his capacity as a police officer if she

---

[7] The Detroit Police Department was identified as a defendant in the federal case but not the instant case.

did not submit to a sexual relationship.  See MCL 37.2103(k).  That required showing is, in our view, logically inconsistent with the determination of the federal court.  Therefore, the federal court's determination that Gibson did not act "under color of state law" collaterally estops plaintiff from proving the second element of her ELCRA claim, and the instant action against Detroit should have been dismissed on that basis.

## III.  CONCLUSION

Plaintiff is collaterally estopped from showing the second element of her ELCRA claim, and Detroit is entitled to summary disposition for this reason.[8]  Therefore, we reverse the trial court's denial of Detroit's motion for summary disposition under MCR 2.116(C)(7) and remand to that court for summary disposition in Detroit's favor.  We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Michael J. Riordan
/s/ Sima G. Patel

---

[8] Having so concluded, we need not address the other two issues raised by Detroit on appeal.

-11-