*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

HEATHER ELIZABETH HAMOOD,

      Plaintiff-Appellant,

v

TRINITY HEALTH CORPORATION, an Indiana
Non-Profit Corporation, INFINITY PRIMARY
CARE, PLLC, a Michigan Professional Limited
Liability Company, RAKESH PATEL, an individual,
jointly and severally,

      Defendants-Appellees,

and

ANTHONY VETTRAINO, an individual,

      Defendant.

FOR PUBLICATION
December 19, 2024
9:20 AM

No. 364627
Wayne Circuit Court
LC No. 21-003353-CD

---

Before: RIORDAN, P.J., and BOONSTRA and YATES, JJ.

YATES, J.

In 2018, plaintiff, Heather Elizabeth Hamood, filed an action in the United States District Court for the Eastern District of Michigan presenting federal and Michigan law claims for sexual harassment, assault and battery, and intentional infliction of emotional distress. On February 25, 2021, United States District Judge Stephen J. Murphy, III, issued an opinion awarding summary judgment to all the defendants, but dismissing the Michigan law claims without prejudice because the court "decline[d] to exercise supplemental jurisdiction over the state law claims." Then, within a matter of two weeks, plaintiff filed this case in Wayne Circuit Court, advancing claims for sexual harassment, assault and battery, and intentional infliction of emotional distress against all the same defendants she had sued in federal court. The trial court granted summary disposition pursuant to MCR 2.116(C)(7) and (C)(10) to all the defendants involved in this appeal. Plaintiff contests the trial court's rulings on her claims for quid pro quo sexual harassment and hostile work environment

sexual harassment under the Elliott-Larsen Civil Rights Act (ELCRA). Also, plaintiff claims that the trial court abused its discretion by denying her leave to amend her complaint. We affirm.

## I. FACTUAL BACKGROUND

This action concerns events when plaintiff was a resident in the family medicine residency program at St. Mary Mercy Hospital, a facility owned and operated by defendant, Trinity Health Corporation (Trinity). Defendant, Infinity Primary Care, PLLC (Infinity), furnished educational oversight for the residency program. Defendant, Dr. Anthony Vettraino,[1] was the assistant director of the family medicine residency program and plaintiff's preceptor. Defendant, Dr. Rakesh Patel, was an internal medicine doctor at the hospital who taught as a rotational faculty member.

Plaintiff entered the residency program in July 2015 and remained in the program until she was terminated in June 2017. Plaintiff's issues began in her second year in the residency program, after successful completion of her first year. In the fall of 2016, plaintiff received her first negative feedback on her work. Plaintiff would later assert that her feedback became increasingly negative after she rejected a sexual advance made by Dr. Vettraino in October 2016. In November 2016, plaintiff found out that she had failed Step 3 of the United States Medical Licensing Examination (USMLE).[2] This was the second time she had failed that exam. If she failed the exam for a third time, she would not be eligible to progress to year three of the residency program or to practice medicine in Michigan. In December 2016, she requested, and was given, a three-month leave of absence from the residency program to focus on preparing to retake the exam for a third time.

In March 2017, plaintiff returned to the residency program and was put on a remediation plan to assist her in catching up to her peers in the program. Later that same month, she complained to the hospital's human resources department that two senior residents were bullying her, but her complaint did not include any allegations of sexual harassment. In May 2017, plaintiff informed Dr. Vettraino and Dr. Stacy O'Dowd, the director of the family medicine residency program and an owner of Infinity, that she had failed the Step 3 examination for a third time. Three days later, plaintiff filed a complaint accusing Dr. Vettraino of being a bully. At that point, plaintiff did not make any accusations of sexual harassment. On June 13, 2017, plaintiff was terminated from the residency program via a letter from Dr. O'Dowd and Dr. John O'Brien, the designated institutional officer. Plaintiff appealed that termination to a panel of three doctors.

During the appeal process, plaintiff submitted a written document in which she alleged that she had been sexually assaulted by Dr. Vettraino in October 2016. Specifically, plaintiff asserted that, after Dr. Vettraino observed her performing a lower-back examination on a patient, he advised her that she had performed the examination improperly. He asked plaintiff to come to a back room

---

[1] On January 19, 2023, the trial court signed a stipulated order of dismissal regarding Dr. Vettraino, so he is not involved in this appeal.

[2] The USMLE is a three-step examination for medical licensure in the United States. USMLE, https://www.usmle.org (accessed October 8, 2024). Step 3 is the final examination in the USMLE sequence on the path to obtaining a license to practice medicine without supervision. USMLE, https://www.usmle.org/step-exams/step-3 (accessed October 8, 2024).

with him so he could show her the proper examination technique. According to plaintiff, instead of showing her the proper examination technique, Dr. Vettraino grabbed her buttocks. Plaintiff responded by asking Dr. Vettraino what he was doing and then quickly leaving the room. Plaintiff contends that it was only after that incident that she began receiving negative performance reviews. Additionally, plaintiff claimed that, in March 2017, Dr. Patel was critical of her, which caused her to cry. Plaintiff alleged Dr. Patel responded by telling her that he would give her his underwear to wipe her tears. Despite all those allegations, the appeal panel upheld plaintiff's termination from the residency program.

In 2018, plaintiff filed a complaint in federal court against the same defendants ultimately named in this case. She asserted claims of (1) quid pro quo sexual harassment in violation of 42 USC 2000e *et seq.*,[3] (2) hostile work environment sexual harassment in violation of 42 USC 2000e *et seq.*, (3) assault and battery, (4) intentional infliction of emotional distress, (5) quid pro quo sexual harassment in violation of the ELCRA, and (6) hostile work environment sexual harassment in violation of the ELCRA. With the exception of the assault and battery claim, which named only Dr. Vettraino, all of plaintiff's claims named all of the defendants.

During her deposition in the federal case, plaintiff alleged that, in May 2017, Dr. Vettraino told her that he "should find a woman half [his] age" and he "should find a nice Swedish woman." Plaintiff was then approximately half Dr. Vettraino's age, and she is half Swedish. Plaintiff further testified during her deposition that Dr. Vettraino had noticeable "erections" in front of her.

Defendants sought summary judgment, and the federal court dismissed the counts of sexual harassment under Title VII. The federal court dismissed both those claims against Infinity because plaintiff had failed to file a timely discrimination charge with the Equal Employment Opportunity Commission, a prerequisite to bringing a Title VII claim. The federal court dismissed those claims against Dr. Vettraino and Dr. Patel because they could not be held personally liable for violating Title VII. The federal court dismissed the Title VII hostile work environment claim against Trinity because, for the purpose of Title VII liability, Dr. Vettraino and Dr. Patel were not considered the supervisors of plaintiff. The federal court based that conclusion on the finding that the two doctors lacked the authority to take tangible employment actions such as hiring, firing, failing to promote, or reassignment with significantly different responsibilities. Because neither of those two doctors was plaintiff's "supervisor" under Title VII, strict liability did not apply and Trinity could only be held liable if it had been negligent in controlling the working conditions. Because plaintiff did not report sexual harassment by Dr. Vettraino or Dr. Patel until after her employment was terminated, the federal court found that Trinity had no notice of the alleged harassment, a fact that was fatal to that claim. The federal court dismissed the Title VII quid pro quo sexual harassment claim against Trinity on the basis of its finding that neither Dr. Vettraino nor Dr. Patel was plaintiff's supervisor, a necessary element of that claim.

Having resolved all the federal claims, the federal court declined to exercise supplemental jurisdiction over plaintiff's claims under Michigan law, and therefore dismissed without prejudice plaintiff's claims for assault and battery, intentional infliction of emotion distress, quid pro quo

---

[3] That statutory scheme is colloquially described as Title VII of the Civil Rights Act of 1964.

sexual harassment under the ELCRA, and hostile work environment sexual harassment under the ELCRA.

Following the dismissal of her claims in federal court on February 25, 2021, plaintiff filed this action in Wayne Circuit Court on March 11, 2021, setting forth claims for quid pro quo sexual harassment under the ELCRA, hostile work environment sexual harassment under the ELCRA, assault and battery, and intentional infliction of emotional distress. With the exception of the claim of assault and battery, which was only against Dr. Vettraino, all the claims were made against all defendants.

Defendants moved for summary disposition under MCR 2.116(C)(7) and (C)(10), arguing that dismissal of plaintiff's ELCRA claims was appropriate under MCR 2.116(C)(7) because those claims were barred by collateral estoppel based on the federal court's ruling on those issues when it dismissed plaintiff's Title VII claims. Defendants also argued that dismissal of those claims was appropriate under MCR 2.116(C)(10) because, regardless of collateral estoppel, plaintiff had failed to raise a genuine issue of material fact as to those claims, so defendants were entitled to judgment as a matter of law. Plaintiff countered that the federal court's dismissal of her Title VII claims had no collateral estoppel effect on her ELCRA claims because the federal court rendered no ruling on the merits of her ELCRA claims. Plaintiff also insisted that she had at least raised a genuine issue of material fact as to those two claims.

After hearing oral argument from the parties, the trial court dismissed plaintiff's ELCRA claims in their entirety because those claims were barred by the federal court's factual findings via collateral estoppel. The trial court stated that the federal case involved the same parties making substantially similar arguments, and that the federal court's finding that plaintiff had not provided notice of the harassment was fatal to both sexual harassment claims. The trial court also concluded that dismissal of the ELCRA claims was appropriate under MCR 2.116(C)(10).[4] Plaintiff moved for reconsideration, which the trial court denied.

After dismissal of most of her claims, including all claims against Trinity, Infinity, and Dr. Patel, plaintiff moved to amend her complaint in November 2021, seeking leave to add a claim for breach of contract against Trinity for terminating her residency before the end of her second year. In August 2022, the trial court held a hearing on that motion and denied plaintiff leave to amend her complaint based on undue delay, compulsory joinder, and futility. This appeal followed.

## II. LEGAL ANALYSIS

On appeal, plaintiff contests the trial court's dismissal of her ELCRA claims against Trinity and Infinity,[5] contending that the trial court erred when it determined that those claims were barred

---

[4] Although not relevant to this appeal, the trial court denied Dr. Vettraino summary disposition of Count III (assault and battery) and Count IV (intentional infliction of emotional distress). The trial court granted summary disposition to all other defendants on Count IV.

[5] Despite brief references to the other claims that the trial court dismissed, plaintiff does not present any argument on appeal that the trial court erred in dismissing those other claims, i.e., her ELCRA

-4-

by collateral estoppel and dismissed the claims under MCR 2.116(C)(7). Plaintiff also argues that the trial court erred when it ruled that summary disposition of those claims was appropriate under MCR 2.116(C)(10). We shall not only consider plaintiff's arguments challenging the trial court's decisions on summary disposition under MCR 2.116(C)(7) and (C)(10), but also address plaintiff's contention that the trial court erred in denying her request to amend her complaint after the entry of summary disposition.

## A. SUMMARY DISPOSITION

The trial court awarded defendants summary disposition pursuant to MCR 2.116(C)(7) and (C)(10). Under MCR 2.116(C)(10), summary disposition is justified if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). All reasonable inferences must be drawn in favor of the nonmoving party. *Dextrom v Wexford Co*, 287 Mich App 406, 415-416; 789 NW2d 211 (2010).

According to MCR 2.116(C)(7), summary disposition may be based on a prior judgment, and summary disposition "on the basis of collateral estoppel . . . is pursuant to MCR 2.116(C)(7)." *Alcona Co v Wolverine Environmental Prod, Inc*, 233 Mich App 238, 246; 590 NW2d 586 (1998). Collateral estoppel "bars relitigation of an issue" in a new action. *Leahy v Orion Twp*, 269 Mich App 527, 530; 711 NW2d 438 (2006). Generally, collateral estoppel can be invoked when three elements are met: "(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full [and fair] opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *Monat v State Farm Ins Co*, 469 Mich 679, 682-684; 677 NW2d 843 (2004) (quotation marks omitted). In determining whether a party was given a full and fair opportunity to litigate an issue, a subsequent action is not precluded if "[t]he issue is one of law and . . . the two actions involve claims that are substantially unrelated[.]" *Id*. at 683 n 2.

"Mutuality of estoppel" occurs when "the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him." *Id*. at 684-685 (quotation marks omitted). But "mutuality of estoppel" is not mandatory in every situation. Whenever "collateral estoppel is being asserted defensively against a party who has already had a full and fair opportunity to litigate the issue, mutuality is not required." *Id*. at 695. Allowing the defensive use of collateral estoppel even when mutuality does not exist "enhance[s] the efficient administration of justice and ensure[s] more consistent judicial decisions." *Id*. at 688. "A judgment is considered a determination of the merits, and thereby triggers the doctrine of collateral estoppel on relitigation, even if the action has been resolved by summary disposition . . . ." *Detroit v Qualls*, 434 Mich 340, 356 n 27; 454 NW2d 374 (1990). Collateral estoppel "is strictly applied in that the issues in both cases must be identical,

---

claims against Dr. Vettraino and Dr. Patel and her intentional infliction of emotional distress claim against Dr. Patel, Trinity, and Infinity. Accordingly, we need not review the trial court's dismissal of those claims.

and not merely similar." *Keywell and Rosenfield v Bithell*, 254 Mich App 300, 340; 657 NW2d 759 (2002) (quotation marks omitted).

### 1. QUID PRO QUO SEXUAL HARASSMENT AGAINST TRINITY

Plaintiff argues that the trial court erred when it granted Trinity summary disposition under MCR 2.116(C)(7) of her ELCRA quid pro quo sexual harassment claim.[6] She insists that collateral estoppel does not apply to that claim because the federal court resolved the Title VII quid pro quo sexual harassment claim against Trinity, but declined to consider the ELCRA quid pro quo sexual harassment claim. Also, plaintiff asserts that the trial court erred by granting summary disposition to Trinity pursuant to MCR 2.116(C)(10).

To prevail on a claim of quid pro quo sexual harassment under the ELCRA, a plaintiff must establish two separate elements: "(1) that she was subject to any of the types of unwelcome sexual conduct or communication described in the statute, and (2) that her employer or the employer's agent used her submission to or rejection of the proscribed conduct as a factor in a decision affecting her employment." *Chambers v Trettco, Inc*, 463 Mich 297, 310; 614 NW2d 910 (2000) quoting *Champion v Nationwide Security, Inc*, 450 Mich 702, 708-709; 545 NW2d 596 (1996); see also MCL 37.2103(k)(*ii*). The plaintiff must demonstrate a tangible employment action, either adverse or otherwise, that was causally related to the plaintiff's submission to or rejection of the harassment. *Chambers*, 463 Mich at 317. Under Michigan law, "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, [or] failing to promote . . . ." *Id*. at 320 n 7 quoting *Burlington Indus, Inc v Ellerth*, 524 US 742, 761; 118 S Ct 2257; 141 L Ed 2d 633 (1998).

"[Q]uid pro quo [sexual] harassment occurs only where an individual is in a position to offer tangible job benefits in exchange for sexual favors or, alternatively, threaten job injury for a failure to submit." *Champion*, 450 Mich at 713. "[T]he party engaged in quid pro quo harassment is almost always, by definition, a supervisor." *Id*. "[A] decision regarding a tangible employment action is an indispensable element of quid pro quo harassment, and only persons with supervisory powers could ever effectively make such a decision." *Chambers*, 463 Mich at 321.

Here, the trial court ruled that plaintiff was collaterally estopped from bringing that claim because of the factual findings the federal court made in its disposition of plaintiff's Title VII quid pro quo sexual harassment claim. The trial court described the federal court's finding that Trinity lacked notice of the harassment as fatal to the ELCRA claim for quid pro quo sexual harassment against Trinity in state court. The trial court erred in that respect because notice is not an element of a quid pro quo sexual harassment claim under the ELCRA. Despite that error, though, the trial court correctly ruled that the claim was collaterally estopped based on the federal court's findings.

---

[6] Plaintiff's complaint generally alleged that she was subjected to unwanted advances by both Dr. Vettraino and Dr. Patel. But she specified that the claim was based on her allegation that her career advancement was conditioned on acceptance of Dr. Vettraino's sexual advances. Thus, Dr. Patel's authority is immaterial to that claim and to our analysis of the trial court's dismissal of the claim.

The federal court dismissed plaintiff's Title VII claim for quid pro quo sexual harassment against Trinity because Dr. Vettraino was not plaintiff's supervisor, so he lacked "the authority to hire, fire, transfer, and promote." See *Wisniewski v Pontiac Sch Dist*, 862 F Supp 2d 586, 597 (ED Mich, 2012). The federal court reasoned that Dr. Vettraino was not empowered by Trinity to take tangible employment actions against plaintiff, which was fatal to plaintiff's Title VII quid pro quo sexual harassment claim.

In resolving plaintiff's ELCRA claim, the trial court had to address the exact same factual issue previously decided by the federal court, i.e., whether Dr. Vettraino had the power to take an action constituting a significant change in plaintiff's employment status, such as hiring, firing, or failing to promote, and therefore was plaintiff's supervisor. See *Chambers*, 463 Mich at 320 n 7. On that same factual issue, the federal court held that Dr. Vettraino was not plaintiff's supervisor, and had not been empowered by Trinity to take tangible employment action against plaintiff. The federal court held that that was fatal to plaintiff's federal quid pro quo sexual harassment claim.

Here, all the elements of collateral estoppel are met. The federal court ruled on a question of fact that was essential to the judgment, and plaintiff had a full and fair opportunity to litigate that issue. See *Monat*, 469 Mich at 682-683. Although mutuality of estoppel is not required here, there is mutuality because the federal case involved the same parties. See *id*. at 683-684, 695. As a result, the elements of collateral estoppel were satisfied, see *id*. at 682-684, so plaintiff was barred from relitigating that issue in this case. *Leahy*, 269 Mich App at 530.

We find no merit in plaintiff's theory that the federal court's ruling on the Title VII claims cannot have preclusive effect on the ELCRA claims. That argument misconstrues the elements of collateral estoppel, which simply require that the *issue* be the same, not that the *claims* be the same. *Monat*, 469 Mich at 682; *Keywell*, 254 Mich App at 340. This Court reinforced that conclusion in an unpublished opinion, holding that the plaintiff's hostile work environment claim brought under the ELCRA was collaterally estopped by findings that a federal court had made in addressing the plaintiff's Title VII hostile work environment claim. *Swanson v Livingston Co*, unpublished per curiam opinion of the Court of Appeals, issued March 24, 2005 (Docket No. 251483), p 3.

The trial court also correctly granted summary disposition pursuant to MCR 2.116(C)(10). No evidence suggests that plaintiff's "employer or the employer's agent used her submission to or rejection of the proscribed conduct as a factor in a decision affecting her employment." *Chambers*, 463 Mich at 310. Put another way, no evidence shows that Dr. Vettraino was in a position to take tangible employment action against plaintiff, i.e., that he could make a decision like hiring, firing, or failing to promote plaintiff. See *id*. at 320 n 7; see also *Champion*, 450 Mich at 713. Plaintiff has not identified any "tangible employment action" Dr. Vettraino had the authority to undertake. Instead, plaintiff has vaguely alluded to Dr. Vettraino's power to "threaten her career" or to wield "extreme power over her." But those allegations, even if true, do not prove that Dr. Vettraino was in a position to take a tangible employment action against plaintiff, so plaintiff has not established the elements of quid pro quo sexual harassment. Additionally, plaintiff has not identified a tangible employment action influenced by her rejection of Dr. Vettraino's conduct. *Chambers*, 463 Mich at 317. Hence, on this record, the trial court appropriately awarded summary disposition under MCR 2.116(C)(10) to Trinity on plaintiff's claim of quid pro quo sexual harassment.

## 2. QUID PRO QUO SEXUAL HARASSMENT AGAINST INFINITY

Plaintiff next faults the trial court for dismissing her ELCRA claim of quid pro quo sexual harassment against Infinity. The trial court awarded summary disposition to Infinity on that claim under MCR 2.116(C)(7) and (C)(10). We agree with Infinity that the trial court did not err when it awarded Infinity summary disposition under MCR 2.116(C)(10). Plaintiff acknowledges that it needed to establish that Dr. Vettraino was in a position to offer tangible job benefits in exchange for sexual favors, or to threaten job injury for rejecting those sexual advances. See *Champion*, 450 Mich at 713. Nothing in the record suggests that Dr. Vettraino had the authority to take tangible employment action involving plaintiff's job. See *id.*; *Chambers*, 463 Mich at 321. On appeal, plaintiff merely asserts that Dr. Vettraino "was in a position to threaten her career" and "in a position of extreme power over her." But this is insufficient to establish that Dr. Vettraino had the requisite authority. Because that is an essential element of the ELCRA quid pro quo sexual harassment claim, see *Chambers*, 463 Mich at 321, the trial court did not err in awarding Infinity summary disposition under MCR 2.116(C)(10) on plaintiff's quid pro quo sexual harassment claim.

## 3. HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT AGAINST TRINITY

Plaintiff also challenges the trial court's dismissal of her ELCRA hostile work environment claim against Trinity. The trial court awarded Trinity summary disposition on that claim pursuant to MCR 2.116(C)(7) and (C)(10). To prevail on her claim of hostile work environment, plaintiff must establish five elements: (1) plaintiff belonged to a protected group; (2) plaintiff was subjected to communication or conduct on the basis of sex; (3) plaintiff was subjected to unwelcome sexual conduct or communication; (4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with plaintiff's employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior. *Radtke v Everett*, 442 Mich 368, 382-383; 501 NW2d 155 (1993). See also MCL 37.2103(k)(*iii*).

The governing standard "does not establish strict liability for sexual assault by a co-worker or supervisor, because an employer must be found vicariously liable via the doctrine of respondeat superior." *Radtke*, 442 Mich at 395 n 41. "An employer, of course, must have notice of alleged harassment before being held liable for not implementing action." *Id.* at 397. "Under the Michigan Civil Rights Act, an employer may avoid liability if it adequately investigated and took prompt and appropriate remedial action upon notice of the alleged hostile work environment." *Id.* at 396 (quotation marks and citation omitted). "The bottom line is that, in cases involving a hostile work environment claim, a plaintiff must show some *fault* on the part of the employer." *Chambers*, 463 Mich at 312.

The federal court found that plaintiff did not report any sexual harassment by Dr. Vettraino or Dr. Patel until after her employment was terminated, so Trinity did not have notice of the alleged harassment until after her employment ended. Whether Trinity had notice of the purported sexual harassment during plaintiff's employment was a question of fact at the heart of the federal court's valid and final judgment. See *Monat*, 469 Mich at 682. See also *Vance v Ball State Univ*, 570 US 421, 424; 133 S Ct 2434; 186 L Ed 2d 565 (2013) (concluding that an employer can be held liable only if it was negligent in controlling working conditions); *Equal Employment Opportunity Comm v AutoZone, Inc*, 692 F Appx 280, 282-283 (CA 6, 2017) (explaining that an employer is negligent

in controlling working conditions if "the employer knew or should have known of the harassment yet failed to take prompt and appropriate corrective action"). Additionally, plaintiff had a full and fair opportunity to litigate that issue. See *Monat*, 469 Mich at 682-683. Thus, collateral estoppel applied and plaintiff was barred from relitigating that issue. *Leahy*, 269 Mich App at 530.

Plaintiff discounts the federal court's finding that Trinity did not have sufficient notice by contending that the federal court "did not reach the right result regarding notice." But plaintiff is barred from relitigating the issue, and this Court cannot entertain plaintiff's challenge to the federal court's finding on the issue. As a result, the trial court appropriately dismissed plaintiff's claim of hostile work environment against Trinity under MCR 2.116(C)(7).

Beyond that, the trial court also correctly granted Trinity summary disposition under MCR 2.116(C)(10) because no genuine issue of material fact existed, so Trinity was entitled to judgment as a matter of law. Plaintiff insists on appeal that Trinity had notice because she "told Dr. O'Dowd about the inappropriate conduct." Plaintiff seems to be referring to the allegations she made in the appeal of her termination in July 2017, but plaintiff did not support that claim with any citation to the lower-court record. In fact, the lower-court record does not contain evidence suggesting that plaintiff made an earlier complaint about the alleged sexual harassment. An employer must have notice of the purported harassment before being held liable for failing to take action, *Radtke*, 442 Mich at 396, and the lower-court record leaves no doubt that such notice did not exist in this case. Thus, plaintiff has not established the fifth element of her claim of hostile work environment, i.e., respondeat superior, so her claim fails as a matter of law. Consequently, the trial court did not err when it awarded Trinity summary disposition of plaintiff's hostile work environment claim under MCR 2.116(C)(10).

4. HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT AGAINST INFINITY

Plaintiff contends that the trial court erred in granting Infinity summary disposition on her hostile work environment claim pursuant to MCR 2.116(C)(7) and (C)(10). The federal court held that plaintiff did not provide notice of the sexual harassment until after her employment had ended. That ruling decided a question of fact by a valid and final judgment, and plaintiff had a full and fair opportunity to litigate the issue. See *Monat*, 469 Mich at 682-683. It does not matter that the federal court made that finding in the context of the federal claim against Trinity, and not Infinity, because mutuality of estoppel is not required in this situation. *Id*. at 695. Thus, collateral estoppel applies, and plaintiff is barred from relitigating the issue. *Leahy*, 269 Mich App at 530. The trial court correctly ruled that plaintiff was collaterally estopped from arguing the notice element of her hostile work environment claim, so summary disposition was appropriate under MCR 2.116(C)(7).

Also, the trial court did not err when it awarded Infinity summary disposition under MCR 2.116(C)(10) because there was no genuine issue of material fact about the notice, or lack thereof, so Infinity was entitled to judgment as a matter of law. The same lack of notice fatal to plaintiff's hostile work environment claim against Trinity dooms her hostile work environment claim against Infinity. There is no genuine issue of material fact that Infinity did not receive notice of the alleged

harassment until after plaintiff's employment ended. That defect warrants summary disposition in favor of Infinity under MCR 2.116(C)(10).[7]

## B. MOTION TO AMEND THE COMPLAINT

Moving beyond the propriety of the trial court's decisions on summary disposition, plaintiff faults the trial court for denying her leave to amend her complaint in the wake of those rulings that seemingly ended the case. Specifically, plaintiff asked to amend her complaint to add a claim for breach of contract against Trinity. The trial court heard extensive oral arguments on that motion on August 18, 2022, and then denied that motion in a ruling from the bench, explaining that there was undue delay in making the request, that amendment would be futile, and that amendment was foreclosed by the compulsory joinder rule in MCR 2.203(A). Resolution of a motion to amend a pleading is "within the sound discretion of the trial court and reversal is only appropriate when the trial court abuses that discretion." *Weymers v Khera*, 454 Mich 639, 654; 563 NW2d 647 (1997).

Here, plaintiff had no right to amend her complaint after the trial court awarded summary disposition to defendants. According to MCR 2.116(I)(5), when the trial court awards summary disposition "based on subrule (C)(8), (9), or (10)" of MCR 2.116, then the trial court "shall give the parties an opportunity to amend their pleadings as provided in MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." In this case, the trial court decided to award summary disposition under MCR 2.116(C)(7) as well as MCR 2.116(C)(10), so the generous language of MCR 2.116(I)(5) did not give plaintiff a right file an amended complaint after the trial court ended the case with an award of summary disposition under MCR 2.116(C)(7).

Turning to MCR 2.118(A)(2), plaintiff observes that leave to amend a complaint "shall be freely given when justice so requires." In *Lane v KinderCare Learning Ctrs, Inc*, 231 Mich App 689, 697; 588 NW2d 715 (1998), this Court cited MCR 2.118(A)(2) and stated that, "[o]rdinarily, a motion to amend a complaint should be granted, and should be denied only for the following particularized reasons: (1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure to cure deficiencies by amendments previously allowed, (4) undue prejudice to the opposing party by virtue of allowance of the amendment, or (5) futility of the amendment." *Id*. But this Court did so in the wake of a summary disposition award under MCR 2.116(C)(8), so this Court invoked MCR 2.116(I)(5) as the justification for applying MCR 2.118(A)(2). See *id*. at 696. Accordingly, this Court simply confirmed that the forgiving standards for amendment under MCR 2.118(A)(2) apply when the trial court grants summary disposition under MCR 2.116(C)(8). Here, plaintiff cannot avail herself of the benefit of that decision from this Court because the trial court granted summary disposition under MCR 2.116(C)(7) as well as MCR 2.116(C)(10).

Instead, plaintiff must confront the fact that she did not seek to amend her complaint until after the trial court had ended the case by awarding summary disposition to defendants based upon

---

[7] In this appeal, plaintiff argues that a non-employer "can be held liable." Plaintiff may be correct that Infinity, which did not contract with plaintiff and might not have been plaintiff's employer, could be held liable. For the purpose of this appeal, Infinity conceded it was considered plaintiff's employer.

a court rule, i.e., MCR 2.116(C)(7), which does not carry with it a right to amend a pleading under MCR 2.116(I)(5). To be sure, this Court has observed that the "contention that because plaintiff's claims against them were dismissed, plaintiff could no longer amend his complaint and allege new theories or claims against them would render MCR 2.116(I)(5) meaningless" because that position "would make it impossible for a party to amend a complaint against another party after a grant of summary disposition pursuant to MCR 2.116(C)(8), (C)(9), or (C)(10) . . . ." *Yudashkin v Holden*, 247 Mich App 642, 651-652; 637 NW2d 257 (2001). Here, in contrast, summary disposition was justified under MCR 2.116(C)(7), so plaintiff was not entitled as a matter of right to the opportunity to amend her pleadings.

The omission of MCR 2.116(C)(7) from the language in MCR 2.116(I)(5) affording parties the largely unfettered right to amend their pleadings after an award of summary disposition under MCR 2.116(C)(8), (C)(9), or (C)(10) did not absolutely bar the trial court from granting plaintiff's motion to amend her complaint. See *South Haven Marine, Inc v Hanson*, unpublished per curiam opinion of the Court of Appeals, issued April 23, 1996 (Docket No. 174776), p 2. But by her own admission, plaintiff had the opportunity for years in federal court and then in state court to request leave to add her claim for breach of contract against Trinity, yet she failed to do so because "it fell through the cracks somehow or something[.]"[8] Therefore, the trial court characterized plaintiff's failure to act for years as undue delay that foreclosed leave to amend. The trial court did not abuse its discretion in making that determination.

"With respect to undue delay, delay, alone, does not warrant denial of a motion to amend." *Bailey v Antrim Co*, 341 Mich App 411, 432; 990 NW2d 372 (2022). But the leeway granted to a plaintiff to amend a complaint "is not a license for carelessness or gamesmanship." *Weymers*, 454 Mich at 660 (quotation marks and citation omitted). In a case such as this, where plaintiff waited years before attempting to add a claim for breach of contract against Trinity, "[d]efense of a new claim obviously will require additional rounds of discovery, in all probability interview of new witnesses, gathering of further evidence, and the identification of appropriate legal arguments." *Id*. (quotation marks and citation omitted). Here, the trial court anticipated all those added costs, complications, and challenges, which prompted the trial court to exercise its discretion by denying leave to amend. Under these circumstances, where plaintiff failed to plead a claim against Trinity for breach of contract in the federal case and then in this subsequent case before Trinity obtained summary disposition of all plaintiff's pending claims, the trial court did not abuse its discretion by denying plaintiff leave to amend her complaint. See *Bailey*, 341 Mich App at 433-434.

Affirmed.

/s/ Christopher P. Yates
/s/ Michael J. Riordan
/s/ Mark T. Boonstra

---

[8] Explaining the failure to do so, plaintiff's counsel acknowledged that plaintiff did not seek leave to amend in the federal case or "when we re-filed in state court." Plaintiff's counsel conceded that "I don't have a good answer as to why. We simply didn't for whatever reason." Because "it fell through the cracks somehow or something, we didn't include it at that time."

-11-